T. CLIFTON JENKINS ET AL., TRADING AS THOMAS C. JENKINS,

*vs.*

EDWARD P. SPEDDEN ET AL., TRADING AS THE SPEDDEN PACKING COMPANY.

*Appeal—Objection Below—Harmless Error—Contract of Sale—Failure to Deliver—Crop Failure—Burden of Proof—Tender of Price—Prayers and Instructions.*

Plaintiff may appeal from a judgment in his favor for less than his demand. p. 642

The failure to file a replication or to join issue on a plea cannot be made available on appeal by reference in the prayers to the pleadings, if not specifically referred to, in view of Code, Art. 5, Sec. 9 A, which provides that a variance between the pleadings and evidence shall not be regarded as raised by any prayer or instruction which does not specifically state the points wherein such variance exists. p. 644

In an action on account of the non-delivery of canned goods sold by defendant packers to plaintiffs, a plea averring that defendants offered to deliver to plaintiffs "as many or more" such goods "than plaintiffs were entitled to demand from them, but plaintiffs refused to accept same unless still more were delivered," is not a plea of tender, but simply a plea setting up a reason for not delivering the goods. p. 644

Where the jury rendered a verdict for plaintiffs, the overruling of a demurrer to a plea which undertook to answer the whole of plaintiffs' claim cannot be regarded as injurious to plaintiffs. p. 644

The refusal to allow a witness to be asked a question is harmless, if he is afterwards allowed to give the evidence desired. p. 645

On an issue as to the failure to deliver canned tomatoes in accordance with a contract of sale which expressly made provision for a partial crop failure, it was proper to admit evidence that such failure had occurred. p. 645

In an action for non-delivery under a contract for the sale of canned tomatoes, which provided that, in case of partial crop failure or prevention of full delivery by other unavoidable cause, the sellers should be responsible only for the delivery of a less amount, plaintiffs cannot complain that their prayer entitling them to recover if the jury found that they demanded delivery of the goods called for in said contract and that the defendants "failed to deliver" said goods, was amended by inserting, after the quoted words, the phrase "or to tender delivery," the prayer being defective in either form as *ignoring evidence of a partial crop failure and requisitions by the United States Government.*                                          p. 645

Plaintiffs' prayer to the effect that they were entitled to recover for the full amount of the tomatoes described in the contract, "if the defendants packed, or by the exercise of proper diligence could have packed, sufficient" to give plaintiffs such full amount, after furnishing the Government the amount required by it, was properly refused, it ignoring any other contracts the defendants had, and giving the jury no information as to what would be proper diligence under the circumstances.
                                                       p. 645.

The burden being on defendants to satisfy the jury that their failure to deliver the amount of canned tomatoes named in the contract was occasioned by a partial crop failure, except such as were required by the Government, it was error to reject plaintiffs' prayer asserting such burden and instructing the jury that if the evidence was such as to leave their minds in a state of equipoise as to whether defendants' failure to deliver the tomatoes was occasioned by a partial crop failure, plaintiffs were entitled to have said contract performed by the delivery of all the tomatoes called for thereunder, except such as were required to be delivered to the Government.           p. 646.

A prayer instructing the jury "that upon the evidence and the pleading in this case the burden of proof is upon the plaintiff to establish his case by a preponderance of evidence," should not have been granted, without some qualification, since it might have misled the jury as to the burden in reference to the failure of crop.                                                 p. 646.

There being evidence that defendants, after making the sale to plaintiffs, accepted and filled orders from others to an amount greatly in excess of that named in plaintiffs' contract, and sold at a higher price to the Government much more than they were required to deliver to it, there was error in granting defendants' prayer, that if the jury find that defendants tendered to plaintiffs a named quantity, less than that named in their contract, that a crop failure occurred in defendants' neighborhood, and that such tender was refused as being of an insufficient amount, their verdict must be for defendants, if they further find that defendants delivered to the Government the amount testified to by their manager.            pp. 647, 649

In a contract of sale reading: "Cash, less 1½ per cent.; discount to be allowed if remittance is made in ten days from date of bill of lading; but if goods have not arrived in ten days, discount to be allowed if 80 per cent. is remitted in ten days from date of bill of lading, and the balance upon arrival," the provision in regard to discount shows that the cash was not required to be paid or tendered at defendants' factory in order to put them in default for non-delivery.            p. 650

*Decided June 17th, 1920.*

Appeal from the Circuit Court for Dorchester County (BAILEY and DUER, JJ.).

Defendants' additional plea was as follows:

"That during the tomato packing season of 1917, there was a partial failure of the tomato crop, and defendants were not able to pack enough No. 3 Standard canned tomatoes to fill the contracts made by them in the early part of the year 1917; that there was a clause in defendants' contract with plaintiffs that excused defendants from more than a 75 per cent. delivery in the event of such crop failure; that in addition to this the Government of the United States for its own uses requisitioned from the defendants 18 per cent. of their entire pack of tomatoes in 1917, which consisted partly of No. 3 Standard tomatoes and partly of No. 2 tomatoes, and

required the delivery unto it of said requisition entirely in No. 3 Standard tomatoes; that defendants were finally required by the said requisition to deliver unto the said Government a little over 22.4 per cent. of all No. 3 Standard tomatoes packed by them in 1917; that on or about the 10th day of November, 1917, the defendants offered to deliver unto the plaintiffs upon said contract as many or more No. 3 Standard tomatoes than the plaintiffs were entitled to demand from them, but the plaintiffs refused to accept same unless still more were delivered unto them."

Among the prayers submitted were the following:

*"Plaintiffs' First Prayer.*—If the jury shall believe from the evidence that the plaintiffs and the defendants entered into the contract of January 12, 1917, offered in evidence, and shall further find that during the packing season of 1917, the plaintiffs demanded delivery of the tomatoes called for in said contract, in accordance with the terms of said contract, and that the defendants failed to deliver (or tender delivery of) said tomatoes, if the jury shall find such failure to deliver (or to tender delivery), then the plaintiffs are entitled to recover in this action, and the verdict of the jury must be for the plaintiffs. (*Granted as amended.*)

*"Plaintiffs' Second Prayer.*—If the jury shall believe from the evidence that the plaintiffs and defendants entered into the contract of January 12th, 1917, offered in evidence, and shall further find that during the packing season of 1917, the defendants packed, or by the exercise of proper diligence could have packed sufficient tomatoes of the character and quality described in said contract to give the plaintiffs the full amount of tomatoes called for in said contract, after furnishing to the Government of the United States the tomatoes required by it from said defendants then the plaintiffs are entitled to recovery in this action for the full amount of the tomatoes described in said contract." (*Rejected.*)

*"Plaintiffs' Third Prayer.*—If the jury find for the plaintiffs, under the plaintiffs' first prayer, then in estimating

their damages, they cannot consider the provisions of the contract, which relieves against full delivery in case of crop failure, unless they shall also find by preponderating evidence that full performance of said contract after allowing for the requirements of the United States Government was directly due to the failure of the tomato crop." (*Granted.*)

"*Plaintiffs' Fifth Prayer.*—If the jury shall believe from the evidence that the plaintiffs and the defendants entered into the contract of January 12th, 1917, offered in evidence, then the burden is upon the defendants to establish by preponderating evidence, that the failure to perform the contract in this case was directly due to the failure of the tomato crop during the season of 1917, and if the evidence in this case is such as to leave the minds of the jury in a state of equipose as to whether or not the defendants' failure to deliver said tomatoes was occasioned by a partial crop failure during said season, then the jury shall find that the plaintiffs were entitled to have said contract performed by the delivery of all the tomatoes called for thereunder, except such as were required to be delivered to the United States Government." (*Rejected.*)

"*Defendants' First Prayer.*—The jury are instructed that upon the evidence and the pleading in this case the burden of proof is upon the plaintiff to establish his case by a preponderance of evidence." (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS and OFFUTT, JJ.

*Philip H. Close* and *F. Leonard Wailes,* with whom were *Ellegood, Freeny & Wailes* and *W. Laird Henry* on the brief, for the appellants.

*Frederick H. Fletcher,* with whom were *Fletcher & Jones* and *T. Sangston Insley* on the brief, for the appellees.

Boyd, C. J., delivered the opinion of the Court.

The appellants sued the appellees for the failure and re-
fusal to perform a contract for the delivery of 1,000 cases,
containing 2,000 dozen of No. 3 tomatoes of the 1917 pack-
ing, and recovered a judgment for $371.00, but not being
satisfied with the amount recovered took this appeal. They
had the right to do that, as decided in *Baer* v. *Robbins,* 117
Md. 213, 225, and other cases. General issue pleas were
filed, upon which issue was joined, and afterwards an addi-
tional plea was filed, to which a demurrer was entered by the
plaintiffs, but the demurrer was overruled.

The sale was made by the Easton Commission Company,
brokers, and the contract was dated January 12, 1917. The
price was $1.10 per dozen, delivery f. o. b. factory, and the
tomatoes were to be shipped promptly as soon as packed.
This provision was in the contract:

"Delivery Guarantee—In case of partial failure of
the crop, or prevention of full delivery by other un-
avoidable causes (except destruction of factory or ware-
house), seller to be held responsible only for delivery
of 75 per cent. of sale made, and for any portion of
remaining 25 per cent. not delivered, seller to pay not
exceeding 10 per cent. of contract price."

There are ten bills of exception presenting rulings on the
admissibility of evidence, and one on the prayers. The plain-
tiffs offered eight prayers, the first of which was granted as
amended, the third, fourth and sixth were granted as offered,
and the other four were rejected. The defendants offered five
prayers, the first and fifth of which were granted, and the
other three rejected. The plaintiffs excepted to the action of
the Court in amending their first prayer, in rejecting their
second, fifth, seventh and eighth, and in granting the defend-
ants' fifth prayer.

No objection was raised by either party by reason of it, but
there is no replication to or joinder of issue on the additional
plea in the record. At the hearing we called attention to

that condition of the pleadings, but no effort was made to correct it, and we understood from the attorneys that there was no such replication or joinder of issue, although issues were joined on the general issue pleas. The rule is thus stated in 1 *Poe on Pl. and Pr.*, Sec. 670 : "The joinder of issue is absolutely necessary, and if the case goes to trial without it, there will be a mistrial. If, however, issue is joined upon one only of several pleas, and the defendant goes to trial without requiring any replication to the other pleas, or any issue upon them, he will be held, after verdict, to have waived the benefit of such pleas." There have been a number of decisions by us and our predecessors in reference to such omissions and defects, and the tendency, particularly in recent years, has been to deal as liberally as possible with them, so as to avoid holding them to cause mistrials. In this case both parties apparently proceeded on the assumption that all that was necessary had been done, and intended to waive such errors. Prayers were evidently offered on that assumption, and there is a note in the record, which seems to have been intended as a stipulation, as follows:

> "Note.—Throughout the trial of the case no question was raised as to the delivery of the proportion of the goods packed of canned tomatoes for the year 1917 required by the Government, and plaintiffs conceded that if the defendants failed to pack sufficient tomatoes in that year to fill their future contracts after giving the Government its requirement of their pack, which was 18 per cent. thereof, then no claim would be made by the plaintiffs for the short delivery up to the amount so required by the Government, and that the plaintiffs would not require strict proof of any requisition therefor, reserving, of course, all other rights of the plaintiffs under its contract."

But in addition to those matters, the omission to file the replication or to join issue on that plea was not specifically raised below. It is said in 18 *Enc. of Pl. and Pr.* 651 that "the failure to file a replication is not a ground of error when

the objection is raised for the first time in an appellate Court." See also 21 *R. C. L.* 555, 556, Par. 115 and Sec. 9 of Art. 5 of the Code. If. formerly it could have been raised by reference in the prayers to the pleadings, it could not now unless specifically referred to. Sec. 9A of Art. 5 (3rd Vol.) of Code. The only doubt we have had was whether it was necessarily raised by an objection to the admissibility of evidence, in a way to bring it before us, as when there is such an objection offered generally, the attention of the Court is called to the pleadings, and the rulings can be reviewed. *B. & O. R. R. Co.* v. *State, use Woodward,* 41 Md. 268, 297. But as the attorneys on both sides seem to have intended to waive the errors and irregularities, we will dispose of the case as if they had not been observed by us. As we have concluded that the judgment must be reversed, for reasons to be given, and as it would have to be reversed because some of the evidence was inadmissible, if the errors in pleading were not waived, no harm can be done by our action in reference to those pleadings, and before a new trial is had the error and omission can be corrected.

While that plea is before us, we will add that in our opinion there was no reversible error in overruling the demurrer, as we do not regard it as a plea of tender, but simply one setting up a reason for not furnishing the tomatoes. Moreover, as the jury rendered a verdict for the plaintiffs, and the plea undertook to answer the whole claim, it appears that they were not injured.

We do not find any reversible error in the ruling in the first exception. The witness, Moffat, who was in charge of the plaintiffs' canned goods department, was asked at what price he bought tomatoes to take the place of those the defendants had failed to ship or deliver. The defendants objected on the ground that the measure of damages was not the difference between the contract price and the price paid by the plaintiffs for other tomatoes, but the difference between the contract price and the market price ruling at the time and place where the delivery should have been made. The attor-

neys for the plaintiffs then said that they recognized that measure of damages, and they were willing for that rule to be applied. In view of that statement, we do not understand upon what ground the plaintiffs excepted, but at any rate the witness did answer the question and testified as to the price they had paid.

Howard P. Spedden, one of the appellees, was asked in the second exception, what was the character and extent of the tomato crop in the neighborhood of his packing house in the year 1917, and in the third exception he answered: "It was a partial failure of the crop in the neighborhood of James Post Office or his packing house, that there was only about sixty (60) per cent. of the usual crop produced." Inasmuch as the part of the contract above quoted expressly makes provision for a partial failure of crop, etc., there can be no question about those rulings being correct. Whether or not there was in fact such failure was for the jury to determine. Nor was there any error in the fourth and fifth exceptions, and they require no discussion, especially in view of what we have quoted above as to the plaintiffs' concession. The sixth was likewise free from objection. The seventh, eighth, ninth and tenth presented evidence as to a partial failure of the crop, and there was no error in either of them.

The plaintiffs' first prayer as offered should have been rejected. It ignores all evidence of a partial failure of the crop and of demands by the U. S. Government, and might under the circumstances have been misleading. The amendment of the Court did not make it any more objectionable than it already was, and the appellants have no cause to complain of it being granted in the form it was. Their second prayer was clearly objectionable on several grounds. It utterly ignored any other contracts the defendants had, and it gave the jury no information as to what would be proper diligence under the circumstances for the defendants to exercise. The jury may have thought that notwithstanding the failure-of-crop clause, if the defendants could have purchased tomatoes elsewhere, regardless of the place and price, it was their duty

to do so. They were not so required under our construction of the contract.

The plaintiffs' fifth prayer presents a somewhat peculiar question, but as the burden was on the defendants to satisfy the jury that their failure to deliver the thousand cases of tomatoes was occasioned by a partial crop failure, except such as were required to be delivered to the Government, we are of the opinion that that prayer should have been granted. Their third only in part covered their fifth. In that connection it may be said that the defendants' first ought not to have been granted, as it instructed the jury, "that upon the evidence and the pleading in this case the burden of proof is upon the plaintiff to establish his case by a preponderance of evidence." That might have misled the jury as to the burden in reference to the failure of the crop, without some qualification, but as we do not find any exception to the granting of it we were not called upon to review the ruling on it. We speak of it, however, because the judgment must be reversed on other grounds, and in case of a new trial, it is proper that our views as to it be known.

The plaintiffs' seventh and eighth prayers were properly rejected, and we do not deem it necessary to discuss them. There was error in granting the defendants' fifth prayer. It was as follows:

"That upon the pleading and evidence, if the jury find upon the evidence that on or about the 10 or 20 of November, 1917, the defendants tendered themselves ready to deliver unto the plaintiffs 600 or 700 cases of the tomatoes described in this contract, and the jury shall further find that there was a partial crop failure of tomatoes in the season of 1917 in the neighborhood of the factory of the defendant; and shall further find that plaintiff refused to accept said offer, if they find same, in fulfilment of the contract offered in evidence on the ground that the amount tendered was not sufficient, then their verdict must be for the defendant, if the jury shall further find that defendants delivered

to the Government of the United States 2,607 cases of canned tomatoes as testified to by the witness, Howard P. Spedden."

The defendants on April 26, 1918, wrote to the brokers, as follows:

> "Referring to the contract from Jenkins, we find this is one of the first contracts of last year, and by some oversight we overlooked this contract. It is our custom to enter these contracts on our books and then file them away, and use our book for shipping. By some means we filed this contract without entering it on our books, and, of course, we overlooked that amount of sale all during the season. Some time in the Fall we had a letter from Jenkins about it, and, of course, we had to go to our files; then we discovered we had overlooked it. By that time we were short of goods, and we wrote Jenkins we could probably make shipment of part of the order as soon as we got straightened out with the Government. After we found we would not have enough left to make a shipment, we let all the balance go to the Government. While we haven't a copy of the letter, we recall writing to Jenkins about Christmas, telling him of the conditions. To this letter we have had no reply, and the matter has rested there. We are willing to arrange to adjust the matter out of the pack of this season. Had we not overlooked the contract, we would not have sold another 1,000 cases to someone else."

Mr. Spedden also testified that "in taking the order of the plaintiff it was improperly filed and overlooked while the remaining future sales were made." With that letter and that testimony in the case, we cannot understand the theory of the defendants' fifth prayer. But that is not all in the record tending to show that the defendants could have delivered to the plaintiffs all of the tomatoes they had contracted to sell them, except what the Government demanded. Indeed, if they had promptly delivered the tomatoes in the early part of the packing season, the Government might not then

have demanded any. The plaintiffs proved by Mr. Spedden
that on a contract with Newell & Co., dated January 14,
1917, just two days after the contract with the plaintiffs,
the defendants sold Newell & Co. 3,000 cases of No. 3 toma-
toes, and delivered 3,000 cases; they sold to Winston, Hooper
& Fisher Co. on January 19th 3,000 cases, and delivered
2,200; on March 19th they sold to F. H. Cobb 700 cases,
and delivered 600; on March 21st they sold to Stevens Co.
550 cases, and delivered 550; and they delivered 2,607 cases
to the Government, which was much more than they were
required . to deliver, besides delivering various amounts of
No. 3 tomatoes to other parties during 1917. The other
prices are not given in the record, but the defendants received
$1.70 a dozen from the Government, while they had agreed
to sell to the plaintiffs for $1.10. Such facts as these, proven
for the most part by one of the defendants, require no com-
ments.

We do not know how the verdict of the jury was reached.
If they adopted the theory of the plaintiffs' sixth prayer,
that if the jury found that the Government was entitled to
deduct 220 cases from the 1,000 cases sold to plaintiffs, and
that there was a partial failure of the tomato crop, and
hence the plaintiffs could only recover 75 per cent. of the
number called for in the contract, less the 220 delivered to
the Government, plus 10 per cent. of the contract price of
the portion remaining undelivered, their verdict would have
been larger than it was. For, even if the jury had only
allowed the difference between the contract price and what
the Government paid (being a difference of sixty cents a
dozen), it would have amounted to over $700.00, besides the
10 per cent. of the contract price of those undelivered.
Under the theory of the first and third prayers of the plain-
tiffs, when taken together, they would have been entitled to
recover for all, after deducting what the Government re-
quired, unless the jury found that the failure to deliver them
was due to the failure of the crop. In view of the admission

of the defendants in their letter and evidence, it cannot be said that the jury could not, under the evidence, have found for all, less those demanded by the Government. There is nothing to show that the Government demanded 2,607 cases, although the defendants delivered it that number. In the stipulation quoted above the Government's requirement was apparently agreed upon as 18 per cent., but there seems to have been allowed 22 per cent. by the plaintiffs in their sixth prayer, and in the defendants' additional plea they claimed 22.4 per cent.

The fifth prayer of the defendants also entirely ignores the question whether the plaintiffs authorized the defendants to ship them the 700 cases. The plaintiffs claim to have written a letter, on November 27, 1917, to the defendants, acknowledging receipt of their letter of the 20th and asking them to ship the 700 cases at once. Mr. Spedden testified that his firm never received that letter, but it was a question for the jury, and the defendants evidently did not follow up their letter. As seen above, in the copy of their letter of April 26, 1918, they said: "After we found we would not have enough left to make a shipment we let all the balance go to the Government," but the evidence shows that the plaintiffs and the brokers were urging the delivery of the tomatoes during the Fall of 1917.

The defendants contend that under the decision in *Lawder Co.* v. *Mackie Grocery Co.,* 97 Md. 1, it was necessary for the plaintiffs to tender payment of the purchase price, or tender themselves ready to pay it, before they could put the defendants in default. But the contract in that case was very different from the one now before us. There the terms of payment were simply "cash, less one and one-half per cent.," and we held that the seller was entitled to demand payment in Baltimore upon delivery of the goods for shipment, and that the buyer had no right to require delivery to him in New Orleans, and an opportunity to inspect the goods there before making payment. But in this contract the terms

were, "Cash, less 1½ per cent. Discount to be allowed if remittance is made in ten days from date of bill of lading; but if goods have not arrived in ten days, discount to be allowed if 80 per cent. is remitted in ten days from date of bill of lading, and the balance upon arrival."

The provision there in reference to discount shows clearly that the cash was not required to be paid or tendered at the factory, in order to put the defendants in default. It is unnecessary to discuss that language, as it speaks for itself and leaves no doubt about it.

Without further prolonging this opinion by discussing other questions, we must reverse the judgment for error in rejecting the plaintiffs' fifth prayer and in granting the defendants' fifth prayer.

> *Judgment reversed and new trial awarded, the appellees to pay the costs.*