VIM TRUCK COMPANY *vs.* VIM MOTOR TRUCK COMPANY.

Suffolk.   December 6, 1920. — March 4, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Contract,* Performance and breach, What constitutes.   *Agency,* Scope of authority.

An action for breach of a contract in writing between a dealer in and a manufacturer of motor trucks cannot be maintained by the dealer against the manufacturer without showing a substantial performance of his obligations thereunder; and, where it appears that in the contract he had agreed to purchase one hundred and fifty of the defendant's cars during the first year of the contract, and that he had purchased only one hundred and twenty-nine, he is not excused for his failure to purchase one hundred and fifty by reason of the fact that he purchased some of the defendant's cars from other dealers; and a verdict for the defendant should be ordered.

An action of contract by the dealer against the manufacturer upon a breach of an alleged oral modification of the contract above described cannot be maintained where it appears that the plans formulated in the alleged modification were for the financial protection of the defendant because of financial straits of the plaintiff, and that they were carried out by agents of the defendant with the consent of the plaintiff.

An action by the dealer against the manufacturer, above described, cannot be maintained upon an alleged oral agreement for surrender by the plaintiff of the contract in writing and payment to him of profits on sales made by agents of the defendant in territory formerly included in the contract in writing, where the plaintiff contends that the oral agreement was made on the defendant's behalf by certain of its salesmen, and it does not appear that the salesmen had authority to make such a contract, but that, on the contrary, the defendant by letters explicitly had refused to accept a surrender of the contract in writing and had insisted upon its performance.

CONTRACT, with a declaration in three counts.   Writ dated February 9, 1917.

The first count of the declaration was upon the contract in writing described in the opinion.

In the second count the plaintiff alleged in substance that on or about August 1, 1916, the plaintiff and the defendant entered into an agreement by which the defendant agreed to continue shipping cars consigned to the defendant's agent for the purpose of supplying the large trade in Boston and vicinity and, from the proceeds received from the sale of cars, the expenses were to be

paid, the plaintiff's obligations to banks and creditors were to be paid and the plaintiff's good will was to be preserved, and the business was to be conducted in the plaintiff's name; that on or about January 1, 1917, the defendant utterly ceased to fill orders, to deliver or to consign cars, neglected and refused to apply the proceeds to the payment of debts incurred by the plaintiff to preserve its good will, and utterly refused to ship or deliver or consign cars in accordance with the agreement with the plaintiff.

In the third count, the plaintiff alleged in substance "that on or about January 24, 1916, it entered into a contract with the defendant by the terms of which the defendant agreed to sell and the plaintiff agreed to buy certain trucks which the plaintiff was to sell in Boston and surrounding territory, which trucks were manufactured by the defendant company," and "in effect a sales agency was established in Boston by the defendant through the plaintiff;" that, under "and by virtue of the contract, the plaintiff performed and was ready to perform at all times the contract on its part to be performed; that on January 24, 1917, the defendant entered into an agreement with the plaintiff, [which the defendant afterwards broke,] by the terms of which, provided that the plaintiff would surrender the contract hereinabove mentioned which had been entered into between the plaintiff and the defendant, and provided that the plaintiff would return to the defendant the automobile parts in its possession and owned by it, the defendant would consign trucks and parts to the defendant's agent for the purpose of assisting the plaintiff in the conduct of its business, that of selling the defendant's trucks in Boston and surrounding territory; that the proceeds from the sale of the trucks and parts were to be paid to the plaintiff until such time as the past indebtedness of the plaintiff was liquidated and until such time as the plaintiff realized and profited on the good will of the business which had been established by the plaintiff at great expense."

In the Superior Court the action was tried before *Fox,* J. Material evidence is described in the opinion. At the close of the evidence, the judge denied a motion of the defendant that a verdict be ordered in its favor, ordered a verdict for the plaintiff in the sum of $1 and reported "all the testimony offered and admitted at the trial, the testimony offered and excluded by me, showing

the exceptions taken therein, for such disposition by this court as justice shall require."

The case was submitted on briefs.

*A. Berenson,* for the plaintiff.

*G. J. Edwards, Jr., & W. L. Allen,* for the defendant.

DE COURCY, J.   The written contract between the parties, dated January 24, 1916, gave the plaintiff dealer for a period of three years the right to sell commercial cars manufactured by the defendant in the territory embracing Suffolk and portions of Norfolk and Essex counties.   The plaintiff agreed therein to purchase one hundred and fifty commercial cars the first year, which were to be ready for delivery at specified times.   Payment of the purchase price was to be made "either by sight draft attached to the transportation company's bill of lading, or by cash before shipment of the cars, as the party of the first part [the defendant] may elect."

The plaintiff corporation was organized by Albert C. White, Jr., with an authorized capital of $20,000.   The contract, above referred to, which was negotiated by White, was contributed to the corporation, and the stock was issued against it, no cash being paid into the treasury from the sale of stock.   Twenty shares were given to one Wheeler, who was president of the corporation, and who also was the New England district sales manager of the defendant.   The treasurer, White, lent the company about $2,000. Between February 15 and August 22, 1916, the plaintiff obtained loans from a trust company, giving as collateral trust receipts representing the trucks.

By the last of September, 1916, the plaintiff was unable to raise funds to carry on the business.   Its total debts, according to the books, were $17,515.15, and its assets only $1,379.25.   A conference was held at New York between one Light, director of sales of the defendant, and White, the plaintiff's treasurer, at which the financial difficulties of the plaintiff were discussed.   At Light's suggestion, one Zink, who had been the plaintiff's director of sales, was placed in charge of its business.   Thereafter trucks were consigned to Wheeler, to be released to Zink as sales were made; and the money was to be paid to Wheeler for transmission to the defendant.   It appears that Zink sold six trucks, in the absence of and without an order from Wheeler, and the proceeds

were not paid over to the defendant. On December 21, 1916, White telegraphed, and later his counsel wrote to Light asking for an interview because of the critical condition of the business. The excess of liabilities over assets on January 1, 1917, was $18,408.63. White testified that Light in Boston on January 18 asked him if he was willing to turn over the stock of parts the plaintiff had on hand, to apply on account of its indebtedness to the defendant; and also said he would send one Seidler and one Smith, two experienced salesmen, who "will work with you and Zink to help map this thing out and put it on its feet." These men came later, and, according to White, Seidler told him, in substance, that, if the plaintiff would give up the contract and the parts on hand, the defendant would make consignments to its own representative here, and the profits from the sale of cars should go to the liquidation of the plaintiff's debts, until all its obligations, including its debt to the trust company, should be paid, and White should be reimbursed for his money and services and the good will he had established.

On January 22, 1917, the defendant wrote the plaintiff that it had taken only one hundred and twenty-nine of the one hundred and fifty Vim commercial cars which were purchased by the contract of January 24, 1916, and were to be delivered during the first contract year; that the remaining twenty-one cars were ready for shipment; and demanded payment of the purchase price before shipment, in accordance with clause nine of the contract. On January 26, the plaintiff wrote the defendant offering to surrender its contract and return the Vim parts, on condition that in the future the defendant would consign trucks and parts to its own agent, "who is to assist us in the conduct of our business in this territory for the mutual benefit of us both, . . . and that all the profits derived from the sale of trucks and parts shall be paid to us." The defendant by letter dated January 29 declined to accept a surrender of the contract upon the conditions named, and insisted that the plaintiff unconditionally surrender the contract, or immediately comply with its terms. On February 6, 1917, the defendant again wrote, stating among other things, "We have not cancelled it [the contract], although you have committed many breaches of it. . . . You owe us for cars and parts over $7,000, . . . we demand the immediate payment of

the moneys due us. . . . You cannot expect us to ship cars or parts to an insolvent corporation." On or about February 15, the defendant and others filed a petition in bankruptcy against the plaintiff corporation.

It is clear from the foregoing that the plaintiff cannot recover on the first count of its declaration, which is for alleged breach of the written contract. It has not itself complied with the terms of the agreement. Without considering other items, it took only one hundred and twenty-nine of the one hundred and fifty cars which the contract required it to take from the defendant the first year. The fact that it bought some Vim cars from other dealers did not excuse it from taking the remaining twenty-one offered by the defendant.

The second count apparently assumes that the arrangement made about October 1, 1916, constituted a modification of the written contract. However that may be, the plans then made for the financial protection of the defendant, through the services of Wheeler and Zink, were carried out with the consent of the plaintiff, and cannot now be considered by it as constituting a breach of the written contract.

The alleged oral agreement of January, 1917, on which the third count is based, is that above referred to as made by Seidler and Smith, when sent here by Light. From the testimony it could be found that the trust company was pressing the plaintiff on overdue obligations; and that some arrangement was discussed whereby the written contract would be surrendered, the defendant would continue to ship trucks to be sold by the plaintiff, and the profits applied in liquidation of its debts. Without considering the other objections urged to this indefinite agreement, the plaintiff has failed to show that any of these persons had authority to enter into such an agreement, binding the defendant in effect to pay the plaintiff's debts and the value of its good will. On the contrary the defendant by its letters of January 29 and February 6, 1917, promptly declined to accept any surrender of the contract except an unconditional one, and demanded immediate compliance with its terms. Further, the defendant was entitled to be paid the purchase money before making more deliveries. It seems apparent that the plaintiff was in such financial condition that it could not perform its obligation under the contract. See *National*

*Contracting Co.* v. *Vulcanite Portland Cement Co.* 192 Mass. 247; *Central Trust Co.* v. *Chicago Auditorium Association,* 240 U. S. 581.

It is unnecessary to discuss the exceptions relating to evidence. Upon examination thereof we find no error affecting the substantial rights of the plaintiff. Considering the record in the aspect most favorable to the plaintiff, we are of opinion that it failed to make out a case, and that the defendant's motion for a directed verdict should have been granted. The plaintiff's exceptions must be overruled, the defendant's exceptions sustained, and judgment entered for the defendant in accordance with St. 1909, c. 236, § 1.   G. L. c. 231, § 122.

*So ordered.*