# FROMM SALES COMPANY, INC. *v.* TROY SUNSHADE COMPANY

[No. 183, September Term, 1959.]

*Decided April 11, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Ellis Peregoff* for the appellant.

*Mathias J. DeVito,* with whom were *Joseph H. Young* and *Piper & Marbury* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

This appeal concerns the propriety of the termination of the distributorship agreement between the Fromm Sales Company, Inc. (Fromm or plaintiff), a Maryland corporation, and the Troy Sunshade Company (Troy or defendant), an Ohio corporation. When Troy canceled the partly written and partly oral agreement because Fromm had failed to meet its financial obligations, this action was brought by Fromm against Troy for damages arising out of breach of contract. At the trial, the court reserved a ruling on the motion for a directed verdict and submitted the case to the jury. The jury returned a verdict for the defendant. It is from the entry of the judgment for costs on the verdict that this appeal was taken.

After extended negotiations. Troy, a manufacturer of awnings and canopies, which it sold throughout the country, by a letter dated January 26, 1954, designated Fromm as its exclusive distributor in Baltimore City, fourteen Maryland

counties, the District of Columbia, and parts of Delaware and Virginia. There was also an oral agreement that Fromm was to be a warehouse-distributor—the highest distributor classification for maximum discounts—which required the stocking of Troy products as a part of its inventory and payment therefor as they were supplied. Fromm had a right, however, under the agreement to sell the products directly to sub-distributors or other dealers in the agreed areas. The terms of the credit provisions are not important here except to note that prompt payment was required in order to assure further deliveries. Fromm also carried competing products in stock.

Fromm started as a satisfactory distributor in all respects but it was not long before it began to lag in making the required payments for products supplied. By May of 1954 it was over $10,000 in arrears on total purchases of approximately $16,000. Numerous suggestions were made by the parties for reducing the past due payments. In fact the balance was reduced to about $5,400 by August of that year. Fromm contends that Troy's sales manager told it not to worry about the amount owed, but this was denied by Troy and the denial was confirmed by the correspondence of the parties during this period in that continuance of the distributorship agreement was constantly predicated on prompt payment of the past due balance of the running account.

Finally, when the account was not sufficiently made current to meet the demands of Troy, a reduction of the territory, and a transfer of some of its inventory to the District of Columbia sub-distributor to be credited on Fromm's past due account, was suggested in letters from Troy to Fromm dated August 6, September 9 and September 16 of 1954. Therein Fromm was told that legal action was imminent and would ensue unless the past due indebtedness was paid without further delay, and it was asked to submit to a reduction of its territory to a lesser number of counties in Maryland and to exclude the out-of-state distribution points which experience had shown were not satisfactory. These letters were written by the manager of the awning division, who was not present at the trial. The letter of September 9 specifically warned Fromm that "all of our distributing agreements are naturally based

upon the specific understanding that failure to pay for merchandise on the basis of our [Troy's] published credit terms constitutes good and sufficient cause for cancellation of any distributorship." There was a general objection by the plaintiff to the admissibility of these letters on the ground that they contained self-serving declarations, hearsay statements and legal conclusions based on the defendant's interpretation of the contractual obligations of the parties. The letters were admitted into evidence over these objections.

It was conceded—since there was no understanding between the parties as to how long the distributorship should last—that the agreement was for an indefinite time. Furthermore, there was no dispute that Fromm was in default when the agreement was terminated by Troy with respect to payments due for products supplied on credit.

On this appeal the parties have raised many questions concerning alleged errors on the part of the trial court with respect to its rulings on the evidence, the instructions to the jury and the motion for a directed verdict, which, when summarized appear to fall into five closely related problems: (i) was there sufficient mutuality to constitute a valid agreement; (ii) if there was an agreement, when and under what circumstances could it be terminated; (iii) if it was terminable due to a failure to make payment for products purchased, was prior notice or warning of an intention to cancel required; (iv) if required, was such notice or warning given by the letters introduced in evidence over objection; and (v) if the letters contained a sufficient notice or warning or other evidence relevant to the issues, were they admissible.

### (i)

We see no reason to consider the alleged lack of mutuality. The question was raised, not by the plaintiff, but by the defendant as one of several reasons why its motion for a directed verdict should have been granted. We shall therefore assume, without deciding, that there was sufficient mutuality to constitute a valid agreement and decide the case on other issues.

### (ii) and (iii)

The principal issue presented is that which involves the

questions concerning the termination of the agreement. There was no dispute that Fromm was in default with respect to payments which it owed to Troy. Yet the plaintiff contends that such default did not constitute a material breach and that in spite of the breach, it was entitled to a notice or warning before the agreement could be terminated. We do not agree. The failure to make payments under an agreement such as this indubitably constitutes a material breach in the absence of a showing of justification or excuse. *Shapiro Eng. Corp. v. Francis O. Day Co.*, 215 Md. 373, 137 A. 2d 695 (1958); *Vim Truck Co. v. Vim Motor Truck Co.*, 238 Mass. 68, 130 N. E. 206 (1921). Cf. *Shriver Co. v. Interocean Co.*, 157 Md. 341, 146 Atl. 223 (1929).

The burden of showing such justification or excuse is on the party who first breached the agreement and thereafter seeks to defend his action. *Jenkins v. Spedden,* 136 Md. 637, 111 Atl. 136 (1920); *Wandell Chocolate Co. v. Goldsmith,* 142 Md. 148, 120 Atl. 372 (1923). Cf. *May Oil Burner Corp. v. Munger,* 159 Md. 605, 618, 152 Atl. 352, 357 (1930), [where the corporation claiming rights under the contract had not yet established the absence of its own breach]. In the instant case, where the plaintiff was the first party to breach the agreement—having already pointed out that failure to make payments when due constitutes a material breach—it is the plaintiff who must show not only the terms of the agreement but also some justification or excuse for its failure to make such payments in accordance with the terms of the agreement. This the plaintiff failed to do.

Since the failure to pay justified a termination of the agreement, Troy was under no obligation to notify or warn Fromm under the circumstances in this case. The plaintiff, in contending that it was entitled to notice or a warning that the agreement would be terminated unless the arrearages were paid, relied heavily on the case of *Shriver Co. v. Interocean Co., supra,* to support its position. In that case notice prior to termination was required, but it is clearly distinguishable on the facts from the case at bar. There [in *Shriver*], the distributor had not been punctual in paying his bills for a number of months but the manufacturer had made no protest in

that regard until suddenly, without any warning, it canceled the agreement. Here [in *Fromm*], the plaintiff failed to show such a course of conduct on the part of the defendant as would constitute an implied waiver or ratification of the plaintiff's default and require the defendant to give notice or a warning prior to terminating the agreement. On the basis of the facts —the unjustified and unexcused failure of the plaintiff to pay its indebtedness to the defendant—we hold that the lower court should have granted the motion of the defendant for a directed verdict.

### (iv) and (v)

With this holding, it is unnecessary to further discuss the questions relating to prior notice or warning of the impending termination of the distributorship agreement. On the question of the admissibility of the letters, it was not error to admit them. If, for no other reason, they were admissible to show the absence of a waiver of the default in the payments admitted to be due and in arrears. Since they were admissible as verbal acts for that purpose, they were not barred by the objections interposed by the plaintiff. See *Bowie v. Martin*, 199 Md. 58, 85 A. 2d 786 (1952).

For the reasons assigned the judgment must be affirmed.

*Judgment affirmed, the appellant to pay the costs.*