# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

PHILLIP P. ETTINGER,
            *Plaintiff-Appellant,*

v.

MILVETS SYSTEMS TECHNOLOGY,
INCORPORATED,
            *Defendant-Appellee,*

and

SUBURBAN BANK OF MARYLAND,
            *Defendant.*

No. 00-1526

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-99-1267-A)

Argued: June 5, 2001

Decided: June 28, 2002

Before WIDENER and WILLIAMS, Circuit Judges, and
Robert R. BEEZER, Senior Circuit Judge for the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

### COUNSEL

**ARGUED:** John Simon Lopatto, III, Washington, D.C., for Appellant. Robert Clarke Dunn, DUNN, CURCIO, KEATING & BRACKEN, P.C., Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Phillip P. Ettinger appeals from the final judgment of the district court in favor of defendant Milvets Systems Technology (Milvets) on Ettinger's claims for breach of contract arising from a business venture involving Ettinger and Milvets. Ettinger also seeks to appeal from the judgment of the district court denying Ettinger's pretrial motion for summary judgment. We decline to review the district court's summary judgment order and we affirm the district court's judgment for Milvets on the merits of Ettinger's breach of contract claims.

I.

This action arises from the alleged breach of two contracts, called the Teaming Agreements by the parties, signed by three principals: Ettinger, Milvets and a third party, William Carney. The first joint business venture created by a Teaming Agreement was formed to provide professional staffing services to the United States Department of State by assisting with the recruitment of qualified individuals for the Department of State's short-term staffing needs. Milvets was the primary contractor with the government. Milvets is a contractor offering information technology and computer database and like services. Carney and Ettinger are former employees of the Resolution Trust Corporation, which is managed by the Federal Deposit Insurance Corporation (FDIC).

The joint venture between the three principals was formed, among other objects, to recruit qualified short-term staff for the Department of State, to create a computerized database from which government human resources officers could select candidates, to hire selected candidates to work at the Department of State as employees of Milvets or as independent contractors, and to manage the salary and benefits

of individuals hired through this arrangement. There is no dispute that Milvets was obligated to acquire and develop the hardware and software necessary to operate the computerized database and that both Carney and Ettinger were obligated to seek out qualified candidates and to market the program to Department of State human resources officers.

Milvets subsequently contracted with the FDIC to provide database support and professional staffing services to facilitate the sale of assets under FDIC control. A second and similar Teaming Agreement for the FDIC contract provided that "Consultant" (Carney and Ettinger) would help to find qualified individuals to service the contract and generally facilitate Milvets' interactions with the FDIC. The parties dispute the extent to which the separate FDIC Teaming Agreement, executed on February 6, 1998, involved Ettinger in the provision of these services or provided him a share in the revenues from the contract.

Both Teaming Agreements contained a termination clause providing that the contracts would terminate upon "[l]ack of performance by Team Member, which includes both Carney and Ettinger, or Milvets of its obligations under this Agreement." Citing these termination provisions, Milvets sent letters to Ettinger and Carney in December of 1998 terminating the two Teaming Agreements because of Ettinger and Carney's failure to perform under the agreements and especially their failure to form a business entity. The letter terminating the FDIC Teaming Agreement also cited, as grounds for termination, what it called misrepresentations made by Ettinger about his previous employment history with the FDIC, which, according to Milvets, affected his eligibility to participate under the terms of Milvets' contract with the FDIC. Milvets' contract with the FDIC mandated that all Milvets' agents satisfy FDIC's eligibility requirements and represented that none of Milvets' agents had been adverse to the position of the FDIC in certain enumerated circumstances. After entering the Teaming Agreements, Milvets learned that Ettinger departed from the FDIC following a dispute over a statement he had made to his supervisor and that he later settled a lawsuit against the FDIC for claims arising out of that termination.

Ettinger subsequently brought this diversity action alleging that Milvets breached its obligations under the Teaming Agreements by failing to share revenue earned from the agencies as was required by the Teaming Agreements.[1] Milvets filed with its answer a counterclaim alleging that Ettinger breached his obligations under the contract, forcing Milvets to incur damages completing those tasks required by the government contracts that were Ettinger's responsibility. Milvets later dismissed its counterclaims.

The district court denied Ettinger's motion for summary judgment on February 11, 2000 and, after a bench trial which commenced February 28, 2000, entered judgment in favor of Milvets. The district court entered judgment for Milvets on the grounds that Ettinger was not entitled to revenue sharing under Milvets' obligation to Ettinger under the contract, because "plaintiff has not shown that he performed on the contract. In fact, the plaintiff's evidence shows clearly that he breached the contract." Specifically, the district court concluded that Ettinger had failed to form a business entity with Carney to service their end of the Teaming Agreements, that Ettinger had failed to provide "personnel program management" as required by the State Department Teaming Agreement, and that Ettinger failed to deliver items required by that Teaming Agreement including personnel resumes and a database of potential employees.

## II.

We first address Ettinger's attempt to appeal from the pre-trial judgment of the district court denying his motion for summary judgment. The district court found that material issues of fact prevented summary judgment in favor of Ettinger. The case then proceeded to a bench trial on the merits after which the district court entered a final judgment for Milvets. This court "will not review, under any standard, the pretrial denial of a motion for summary judgment after a full trial and final judgment on the merits." *Chesapeake Paper Prods. Co. v.*

---

[1]Ettinger also sued Suburban Bank of Maryland because Milvets had assigned an interest in the revenue earned on the government contracts to the bank as security for a loan extended to Milvets. The district court dismissed the counts against Suburban Bank of Maryland from the suit for failure to state a claim, and none of the parties appeal that decision.

*S&W Eng'g*, 51 F.3d 1229, 1237 (4th Cir. 1995). Accordingly, we decline to review the district court's pretrial judgment on Ettinger's motion for summary judgment.

### III.

Ettinger also appeals from the final judgment for Milvets entered by the district court after a bench trial. The district court concluded that Ettinger could not recover for Milvets' alleged breach under the contract because Ettinger had failed to establish his own performance under the contract. We review a district court's interpretation of contractual provisions de novo. See *Hendricks v. Cent. Reserve Life Ins. Co.*, 39 F.3d 507, 512-13 (4th Cir. 1994). Where the district court properly has considered extrinsic evidence to interpret ambiguous provisions, however, our review is more deferential, and we review only for clear error. See *Hendricks*, 39 F.3d at 512-13.

Each of the Teaming Agreements contained choice of law provisions indicating that, where the federal common law with respect to government contracts is inapplicable, the contract will be governed by Maryland law. As a federal court exercising diversity jurisdiction, we apply the choice of law rules of Virginia, the forum state in this case. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). The law of Virginia favors contractual choice of law provisions, giving them full effect except in unusual circumstances. See *Tate v. Hain*, 25 S.E.2d 321, 324 (Va. 1943). Accordingly, we apply the substantive law of Maryland to this contract dispute.

### A.

Ettinger first argues that Milvets' revenue sharing obligation under the Teaming Agreements was iron clad and was not conditioned on his own performance under the contract. We have construed Maryland law to the contrary, however, concluding that "[p]erformance of the contract by parties suing on it is a condition precedent to recovery." *Hubler Rentals Inc. v. Roadway Express, Inc.*, 637 F.2d 257, 260 (4th Cir. 257) (citing *Wischhusen v. Spirits Co.*, 163 A. 685 (1933)). "[U]nder Maryland law, a party suing on the contract must first prove his own performance, or an excuse for nonperformance, in

order to recover for any breach by the opposing party." *Hubler Rentals*, 637 F.2d at 260-261.

B.

In the alternative, Ettinger argues that the district court erred by concluding that he failed to perform substantial and material obligations under the Teaming Agreements in three respects. A district court's finding of nonperformance is a question of fact, *Boston Iron & Metal Co. v. United States*, 55 F.2d 126, 127-28 (4th Cir. 1932), which we review for clear error.

First, the district court ruled that Ettinger breached both the FDIC and State Department Teaming Agreements because "[t]he agreement called for the formation of a business entity by the two members of the team, and that was never done." Both Teaming Agreements were nominally between Milvets and "Consultant, a to be established business entity" whose principals were to be Carney and Ettinger.[2] Ettinger concedes that no business entity was formed, but argues that formation of the business entity was not a material or substantial obligation under the contract. The district court concluded that formation of the business entity was a material element of the contract. Not only was no business entity formed, Ettinger and Carney split up and went their different ways.

Testimony before the district court indicated that the formation of a cooperative business entity was an important part of the Teaming Agreement and that the failure to form such an entity was detrimental to Milvets contracts with the government. B.J. Daniels, the president of Milvets, testified that the Teaming Agreement envisioned a business entity to be formed by Ettinger and Carney that would be capable of operating personnel management facilities required under the contract. But, he testified a breakdown in relations between Carney and Ettinger made it impossible for them to work together. They refused, for example, to meet with him together.

---

[2]The district court decided early in the trial that Ettinger had standing to bring his suit because, although the contract was nominally between Milvets and "Consultant," both Ettinger and Carney signed the contract as "Principals."

The business relationship between Carney and Ettinger turned adversarial over a disagreement about compensation due Ettinger under the FDIC Teaming Agreement. Ettinger later sued Carney for a share of revenue received by Carney from Milvets under the FDIC Teaming Agreement. As noted, the relationship between Carney and Ettinger deteriorated to the point that they could no longer work together. On this record, we do not believe that the district court clearly erred by concluding that Ettinger's failure to form a business entity with Carney was a material breach of the Teaming Agreements. Ettinger argues that Milvets waived any objection to his failure to form a business entity with Carney by choosing to work with each of them individually. The termination letters sent to Carney and Ettinger by Milvets invited them to renegotiate their participation in the Department of State contract as independent consultants. Carney accepted this offer but Ettinger declined. There is no dispute that, although Ettinger continued some participation in the State Department contract after Milvets terminated the Teaming Agreements in December of 1998, Milvets in December 1998 took affirmative steps to prevent Ettinger from negotiating independent compensation rates. The district court did not err by concluding that Milvets had not waived Ettinger's breach of the Teaming Agreements by accepting his performance after the breach.

Second, the district court decided that "plaintiff breached this agreement in the failure to establish a 'personnel program management.'" An appendix to the Department of State Teaming Agreement between Milvets and Ettinger entitled "Statement of Work" required "Team Member" to provide "[a]ll personnel program management, including assisting Customer design its program requirements, the operational systems, recruitment protocol, assignment analysis." The district court noted that "[t]he only thing the plaintiff has testified to is that he hired a number of applicants, sent them on, they were ultimately hired. . . . That, according to all of the testimony in the case, was not establishing a personnel program management system."

The district court considered extrinsic evidence and testimony to determine the tasks implicated by Ettinger's obligation under the State Department Teaming Agreement to provide all "personnel program management." Daniels testified to the obligations involved with personnel program management, describing them to be "overall

administrative management of the contract itself. Including salaries, benefits, payroll, security clearance preparation, contacting the individuals pertaining to their salary negotiations or their labor category." Daniels testified that Team Member, Ettinger, was to handle all of those personnel management functions, as if Milvets had outsourced those obligations. Daniels also testified that Ettinger failed to perform and that Milvets had to assume those administrative responsibilities in order to save the contract with the Department of State.

The district court also heard testimony about a memorandum identifying the tasks involved with personnel program management that was completed by an employee of Milvets on April 27, 1998. The memorandum contains markings in Ettinger's handwriting, made at a meeting between Daniels and Ettinger, indicating, according to Daniels' testimony, which of the personnel program management tasks Ettinger conceded were his responsibility under the Teaming Agreement.[3] Ettinger conceded responsibility only for processing applications, conducting interviews, arranging interviews, validating passports and visas, and arranging travel advances. Daniels testified that the limited responsibility accepted by Ettinger, as indicated by his markings on the memorandum, did not reflect the understanding of the parties in the Teaming Agreement as to the nature of "personnel program management." Furthermore, Daniels testified that Ettinger failed to perform even those tasks which he conceded were his obligation under the Teaming Agreement.

Carney testified for Milvets and also indicated that he and Ettinger did not perform personnel program management as required by the State Department Teaming Agreement and that Milvets was forced to assume those responsibilities. In light of the evidence provided, the district court's conclusions that Ettinger's personnel program management obligations under the State Department Teaming Agreement extended to those tasks identified by Daniels at trial and that Ettinger did not perform those obligations are not clearly erroneous.

---

[3]The "personnel program management" as used in the Statement of Work addendum to the State Department Teaming Agreement is sufficiently ambiguous to warrant consideration of parol evidence on that issue.

Third, the district court found that Ettinger failed to deliver items required by the contract. The appendix to the Department of State contract lists "Deliverables to be provided by Team Member" including "Database candidates." Furthermore, Milvets' primary contract with the Department of State obligated it to provide "a meaningful database of individuals available for duty, accessible through software" that meets certain specifications. Thus, in addition to identifying candidates for the government agencies' immediate hiring needs, Ettinger was obligated to identify individuals which make up a computerized database of candidates from which Department of State managers could select to satisfy their future hiring needs.

The district court held with respect to Ettinger's obligation to identify candidates for the computerized database: "[t]hat was never done. There is no evidence from the plaintiff that [the database] was ever established." Ettinger testified that all but 15 of the resumes he provided to Milvets for entry into the database were individuals who were hired under the contract for work at the Department of State, rather than prospective candidates for future hiring needs. Carney testified that Ettinger had a stack of resumes in his home and that he never delivered all of them to Milvets. Ettinger admitted that he had candidate resumes in his possession. Daniels testified that Ettinger never delivered those resumes, despite repeated requests from Daniels. Daniels also testified that Milvets had to identify candidates for the database because of Ettinger's failure to perform. Milvets efforts in this regard included attending job fairs and retirement seminars for Department of State employees, placing advertisements in the Washington Post and circulating fliers.

Ettinger notes that the State Department Teaming Agreement contains an appendix that defines resumes gathered by Carney and Ettinger as proprietary and reserves to them the "exclusive right to utilize this information, *except as authorized elsewhere in this agreement*." Because the deliverables requirement of the Teaming Agreement requires Ettinger to identify candidates for the computerized database, the proprietorial information appendix does not excuse him from doing so. Accordingly, we find that the district court's conclusion that Ettinger breached his obligations under the State Department Teaming Agreement by failing to perform is not clearly erroneous.

C.

Finally, Ettinger argues that even if he breached the Teaming Agreements, Milvets breached first because it failed timely to pay the consulting fees and revenue sharing required by the Teaming Agreements. Under Maryland law, the burden of showing justification or excuse rests on the party who first breached a contract and thereafter seeks to defend his actions. *Fromm Sales Co. v. Troy Sunshade Co.*, 159 A.2d 860, 863 (Md. 1960). The failure to make payments required by an agreement constitutes a material breach. *Fromm Sales Co. v. Troy Sunshade Co.*, 159 A.2d at 863. Thus, the argument goes, if Milvets materially breached the Teaming Agreements by failing to pay Ettinger before Ettinger breached his own obligations under the Teaming Agreement, then Ettinger's breach is excused and he may recover for any part performance he rendered under the Teaming Agreement.

Ettinger made this argument before the district court. Ettinger argued that Milvets never made payments under the FDIC Teaming Agreement and that the payments made under the State Department Teaming Agreement were too little and too late. Nonetheless, the district court found that Ettinger breached under the Teaming Agreement and awarded judgment for Milvets, indicating that Ettinger's breach had not been excused. The evidence before the district court justified this conclusion.

Milvets was obligated to pay a monthly consultancy fee and revenue sharing to "Team Member" under the FDIC Teaming Agreement. Milvets sent several payments totaling $41,053 to Carney under the names of both Carney and Ettinger. Carney did not distribute those payments to Ettinger. Ettinger sued Carney and an arbitrator ordered Carney to send all future payments under the FDIC Teaming Agreement to Ettinger until such time as Ettinger had been paid as much under the Teaming Agreement as had Carney. The arbitrator specified that, if Ettinger did not receive as much as Carney had received under this arrangement, he would have no cause of action against Carney for the difference. Milvets terminated the FDIC Teaming Agreement in December of 1998 and sent no more payments to "Consultant" as consultancy fees or revenue sharing under that agreement, although it did continue to compensate Carney under a separate consulting arrange-

ment. The district court did not err by concluding that payments made to Carney in the name of both Ettinger and Carney discharged Milvets' payment obligation to both until the termination of the Teaming Agreement in December of 1998.

Milvets also made payments under the State Department Teaming Agreement. It is undisputed that Milvets paid $44,450.19 to Ettinger between December of 1997 and March of 1999. Ettinger argues that Milvets breached first because the payments it made pursuant to the State Department Teaming Agreement were not timely. The State Department Teaming agreement required consultancy fees to be made on the first day of every month and revenue sharing payments to be made on the same day that Milvets received payment from the government. Milvets made four consultancy payments of $4,000 each to Ettinger in December of 1997, and in February, May and July of 1998. Milvets did not receive its first payment from the Department of State until August of 1998. Distribution of revenue sharing to Ettinger was further delayed by processing at Suburban Bank of Maryland where Milvets had taken a loan secured by the revenue from the Department of State contract to finance payroll until the government completed its billing cycle for the contract. On these facts, the district court's conclusion that any delay by Milvets in making required payments did not constitute a material breach was not clearly erroneous.

Ettinger also argues that, in addition to being late, the payments he received were not adequate. In light of our conclusion above, however, that the district court did not err in finding Ettinger to be in breach of the contract, the alleged inadequacy in payments made by Milvets are relevant only if they preceded Ettinger's own breach under the contract. There is no dispute that Ettinger received four payments of $4,000 each, representing his guaranteed consultancy fees under the State Department Teaming Agreement and we have concluded that any delay in those payments did not constitute a material breach. As stated, Milvets did not receive revenue from the Department of State until August of 1998. We find no evidence indicating that the district court's conclusion that Ettinger's breaches, his failure to form a business entity with Carney, failure to deliver database candidates as required by the State Department Teaming Agreement, and failure to establish personnel program management, preceded any

material failure on the part of Milvets to make revenue sharing payments starting in August of 1998. Thus, Ettinger's breaches of the Teaming Agreements are not excused and he cannot recover against Milvets under the Teaming Agreements.

Accordingly, the judgment of the district court is

*AFFIRMED.*