AUTOMOBILE INSURANCE COMPANY *v.* WILLIAM
G. THOMAS ᴇᴛ ᴀʟ.

NORTHERN ASSURANCE COMPANY, Lɪᴍɪᴛᴇᴅ, *v.*
WILLIAM G. THOMAS ᴇᴛ ᴀʟ.

*Insurance—Loss by Fire and Lightning—Fire on Adjoining
Premises—Fall of Wall—Notice of Loss—Par-
tial Non-disclosure.*

Since it is by the intention of the parties that the applicability
of the insurance under a policy is to be tested, there is a distinc-
tion between causes of loss for which liability is imposed by
law in tort, and causes of loss for which the insurer may have
contracted to be liable.                              **p. 257**

A policy of insurance against "direct loss or damage by fire"
does not restrict the insurance to fire on the insured premises,
so as necessarily to exclude a loss by the collapse of a wall on
the premises or on adjoining property, as a result of fire.

pp. 257, 258

Insurance against fire and its effects does not extend to losses,
such as from the collapse of a wall, occurring beyond such time
as is reasonably necessary for the purpose of clearing away dan-
gerous conditions left by the fire.               pp. 258, 259

Where the insured building was injured by the fall of a wall
which had been part of another building destroyed by fire
thirty-eight days before the wall fell, *held* that whether the
fall of the wall was an effect of the fire, so as to make it a
cause of loss under the policy, was for the jury.      p. 260

A loss caused by the fall on the insured building of a neigh-
boring wall, as a result of such wall being struck by lightning,
was a direct and immediate loss from lightning, for the pur-
pose of the policy.                             pp. 260, 261

A rider on a policy of fire insurance, providing that the policy
covers loss or damage by lightning, extends to the lightning

insurance all consistent requirements of the policy, including
the requirement of notice and proofs of loss.            p. 261

  In the case of an insurance policy against loss both from fire
and lightning, the notices, proofs, and claims for losses from
the two contingencies need not be given separately, if the con-
tingencies happen in combination, as when the insured build-
ing was injured by the fall of a neighboring wall, which had
been part of a building destroyed by fire, and which fell when
struck by lightning.                              pp. 261, 262

  As a general rule, if there has been no concealment by the
insured, and no resulting disadvantage to the insurer which
would give rise to an estoppel, the notices and proofs given by
the insured do not restrict the claim finally, and may be cor-
rected.                                          p. 262

  Where a policy covered loss both by fire and lightning, the
failure to specify lightning in the notice and proofs of loss,
which did specify fire, *held* not to create an estoppel as against
the insured's claim of loss by lightning, his delay in reporting
the lightning stroke not having prevented the insurer from
getting evidence in regard thereto, and a suit on the policy,
based on loss by lightning, having been entered before a pre-
vious suit, based on loss by fire, was reached for trial.    p. 262

  One suing on a policy, who based his claim on loss by both
fire and lightning, but who had failed to specify loss by light-
ning in his notice and proofs of loss, had the burden of showing
that such non-disclosure was due to honest mistake or ignorance,
and not to concealment.                          pp. 262, 263

  The settled practice in this state, not to require the jury to
answer interrogatories or make special findings of fact in cases
in which they are to find general verdicts, is not to be departed
from.                                           p. 263

*Decided June 8th, 1927.*

  Appeals from the Circuit Court for Allegany County
(Doub, J.).

  Action by William G. Thomas and others against the
Automobile Insurance Company of Hartford, Connecticut,

and action by the same plaintiffs against the Northern
Assurance Company of London. From a judgment for
plaintiffs in each case, each defendant appeals. Judgments
reversed.

The causes were argued before Bond, C. J., Pattison,
Urner, Adkins, Offutt, Digges, and Parke, JJ.

*W. Calvin Chesnut* and *S. Ralph Warnken,* with whom
was *Horace P. Whitworth* on the brief, for the appellants.

*William D. Macmillan,* with whom were *William H.
Price, Jr., David W. Sloan,* and *Semmes, Bowen & Semmes,*
on the brief, for the appellees.

Bond, C. J., delivered the opinion of the Court.

These are suits upon policies of fire insurance in the New
York standard form, with riders to cover loss by lightning,
for loss and damage to an insured building from the fall
upon it of a wall of a neighboring building, during a storm,
thirty-eight days after fire had destroyed that neighboring
building and left the wall standing. At the trial there was
a dispute of fact on the question whether lightning had
struck and thrown down the wall; and the questions of law
presented were whether the loss from the falling over of the
wall would be a "direct loss or damage," either by fire or
by lightning, within the meaning the policy, and whether
the claimants had given the requisite notice and proofs to
support claims for loss by lightning, if lightning should be
found to have caused the fall of the wall. There was a
further question of the form of verdict.

The insured building is in Frostburg, and the fire oc-
curred, on March 12th, 1925, in a building beside it, but
separated from it by an alley ten or twelve feet wide. Cross-
ing the alley, the flames caused a loss or damage in the
insured building of $841, and liability of the insurers for
that loss is not disputed. The fire left standing portions
of walls of the neighboring building on the front and on

the alley side of the lot, one story higher than the insured building, and bare and unsupported except to the extent that a chimney in the side wall may have reinforced it. There was testimony offered for the defendant that, after the fire, the wall had been inspected by an architect, with a view to its use in a new building if its condition permitted, and that he concluded that there was no danger of a fall of the front wall, and thought the side wall stronger still. On April 19th, 1925, however, the side wall fell over during a storm, and caused the additional and larger loss to the insured property which is disputed. Notices were given to the insurers, and proof furnished them in due time of the combined losses, and suit was entered on each policy for its share of the combined losses, all alleging that the whole was "a direct result of a fire which occurred on March 12th, 1925." And ten months later, before these first suits were reached for trial, an additional suit was entered on each policy, alleging that the property insured was damaged and destroyed as a result of lightning striking the wall of the neighboring building which had been left standing after the fire. No notice was given, or proofs of loss furnished, specifying lightning as the cause of the loss, and one of the defenses to the suits is based on that fact.

All four cases were consolidated for trial by stipulation of the parties, and a single verdict and judgment were entered for the combined losses, for that from the flames and that from the subsequent fall of the wall. The witnesses agreed that the wall fell during a heavy thunder storm, with much rain and lightning, but there was some difference on the severity of the storm, and a sharp difference on the occurrence of any lightning just before the fall of the wall. There was evidence, however, of actual striking of the wall by lightning and its fall as a consequence of the stroke.

The rulings complained of were all in granting or reject- ing prayers for instructions to the jury, according as the trial court decided the questions of law presented.

Taking up, first, the question of the applicability to this

subsequent loss of the insurance against fire only, that is, putting aside for the present the possibility of a lightning stroke as the cause of the fall of the wall, as if the jury had found against that possibility, it is to be borne in mind that we have a written contract to apply, and that it is by the intention of the parties that the applicability of the insurance is to be tested. There is a distinction to be observed between causes of loss for which liability is imposed by law, in tort, and causes of loss for which a party may have contracted to be liable. The tests are not the same for both obligations, although in particular instances the causes for which liability attaches might be included under each test. We are aware that some courts have declined to accept this view, but we have not been able to agree with them. In the course of the discussion in *Leyland Shipping Co. v. Norwich Union Fire Co.* (1918), A. C. 350, 369, on the cause of loss to an insured vessel, Lord Shaw said: "The true and the overruling principle is to look at a contract as a whole and to ascertain what the parties to it really meant. What was it which brought about the loss, the event, the calamity, the accident. And this not in an artificial sense, but in that real sense which the parties to a contract must have had in their minds when they spoke of cause at all." And in *Bird v. St. Paul Fire and Marine Ins. Co.,* 224 N. Y. 47, the court, Cardozo, J., said: "General definitions of a proximate cause give little aid. Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract." And this we take to be the one guide consistent with the function of deducing the obligation from the agreement of the parties, rather than imposing an obligation on them. *Transatlantic Fire Ins. Co. v. Dorsey,* 56 Md. 70; *Bower & Kaufman v. Bothwell,* 152 Md. 392.

While there may have been some difference of opinion on the question whether the phrase "direct loss or damage by fire" is meant to restrict the insurance to fire on the prem-

ises (See *Everett v. London Assurance,* 19 C. B. N. S. 126, and *California Co. v. Union Compress Co.,* 133 U. S. 387, 415 to 416), we take it to be settled now by the great weight of authority, and the general understanding and intention, that the insurance is not so restricted. *New York etc. Express Co. v. Traders Co.,* 132 Mass. 337, 381; *Ermentrout v. Girard Co.,* 63 Minn. 305; *Russell v. German Co.,* 100 Minn. 528; *Western Assurance Co. v. Hann,* 201 Ala. 376; *Bird v. St. Paul Fire and Marine Ins. Co., supra; Johnson v. West of Scotland Co.,* 7 Court of Sess. Cas. (Scotch, 1828), 52. It seems to us clear, as has been pointed out in some of these cases, that practical men selling or obtaining insurance would not have in their minds any distinction between such common incidents of a fire as the damage from the breakdown of the structure and the damage from burning. Both alike would be considered losses or damages by the fire. And we are equally satisfied that practical men would not intend any distinction to be drawn between flame extending from a fire in a next-door building and the structural breakdown from the fire extending its effects over upon the building insured, but would consider losses from one and the other source as alike covered by their fire insurance.

But it seems to us a different question is presented by the fall of a next-door wall left standing for a considerable time after the fire, for lapse of time brings with it weakening influences; wind and weather, and perhaps other forces, such as repeated vibrations, work upon the wall; and it seems unlikely that insurance against these forces would be intended except within some limits. This is more clearly apparent if we suppose a case of a wall left standing a year or more after a fire, and maintained for future use. If the insurance covers loss from a fall after such a period as that, it must cover the risk of the year's cumulative effects of such force as wind and weather vibrations, and might be said to insure the judgment and care of the owner who maintains it. There seems to us to be an analogy in those cases of marine insurance in which the maintenance of a bad condition,

rather than the accident which caused the condition, has been treated as the cause of a loss.    In *Hazard v. New Eng. Marine Co.,* 1 Sumner, 218, a coppered ship had her false keel broken off by striking on a rock, in worm-infested waters; no repairs were made, the worms reached the bottom, and in the course of many months rendered the ship wholly innavigable.    Justice Story held that in no just sense could the loss by the worms be deemed a loss immediate upon the accident, which was covered by insurance.    The neglect to repair was the immediate or proximate cause of the loss, and the accident only the occasion or remote cause.    That case was appealed, but the Supreme Court held merely that damage by worms was not a peril insured against in any event.    8 *Peters,* 557, 583; *Copeland v. New England Marine Co.,* 2 Metc. (Mass.), 432, 437; *Gen. Mut. Ins. Co., v. Sherwood,* 14 How. 357, 365; *Bradhurst v. Colonial Ins. Co.,* 9 Johns, 17; *Schieffelin v. N. Y. Ins. Co.,* 9 Johns, 21; *Amer. Ins. Co. v. Center,* 4 Wend. 45; *Currie v. Bombay Ins. Co.,* L. R. 3 P. C. 82; 2 *Arnold, Marine Insurance and Average* (11th Ed.), sec. 785.    There must, of course, be a lapse of time between a fire and the clearing of dangerous condition left by it, and during such time as is reasonably necessary for that purpose it may be said that the immediate or proximate effects of the fire continue, but beyond that reasonable time, we think the insurance against fire and its effects does not apply.

In the case of *Johnson v. West of Scotland Co..* already cited, the gable end of a ruined wall fell on an insured building next door, two days after a fire, and while the wall was being taken down as unsafe; and it was held that, if the work of removing did not operate as an intervening cause, the fire was the proximate cause of the fall.    And on the other hand, in a case in the Manchester Civil Court (*Gaskarth v. Law Union Co.*), reported in 6 *Ins. Law Journal,* 159, when, notwithstanding a warning to the owner that a wall left standing by fire on his premises was dangerous, he left it standing for eight days, and then it fell on an insured building, the

consequent loss was not covered by the insurance. Two comparatively recent cases in this country have held that the fall of neighboring walls upon the insured buildings in a windstorm might properly be found to have been the proximate consequences of fire in the neighboring buildings, even when the fire occurred four months before the fall. *Russell v. German Fire Co.,* 100 Minn. 528; *Western Assur. Co. v. Hann,* 201 Ala. 376. See further *Cuesta v. Royal Ins. Co.,* 98 Ga. 720; *Beakes v. Phoenix Ins. Co.,* 143 N. Y. 402. The principles followed in the *Russell* and *Western Assurance Company* cases are not in entire agreement with those we have stated, but we have been unable to change our views to agree. Whether thirty-eight days extends beyond the reasonable limit of the fire insurance, is a question of fact, which we think we are not justified in taking as beyond dispute, but we think it is a period of such length as to make it improper for the court to rule that the fall of the wall, if it would not have occurred except for the fire, was a cause covered by the insurance against fire. The trial court did so rule in granting the instruction prayed in the plaintiff's first prayer, and we find that ruling erroneous. The question of fact stated should have been referred to the jury.

The question whether the loss from the fall of the next-door wall would be a direct loss from lightning, if lightning is found to have struck it and thrown it down, seems to be answered by the reasoning with respect to the applicability of the insurance against fire to losses from immediate, incidental breakdowns of structures. The testimony as to a lightning stroke is that it occurred immediately before the wall fell.

It seems to us we cannot suppose that the parties intended to restrict the insurance against loss from lightning to loss to the portion of property actually struck, and that if common incidental effects are to be considered covered at all, it is unlikely that the throwing down upon the insured property of neighboring objects, such as walls or trees struck by lightning, would be distinguished in the minds of the parties

from effects of a lightning stroke directly upon the insured property. It has been held that when lightning struck nearby and the insured property was damaged by a consequent jarring of the ground by it, the damage was not a direct loss or damage by lightning. *Kattelman v. Fire Assn.,* 79 Mo. App. 447. And see *Beakes v. Phoenix Ins. Co.,* 143 N. Y. 402. We do not attempt to fix a line for distinguishing such cases, if they are to be distinguished. It seems sufficient to say that in the case before us the loss, if from a lightning stroke, is an immediate loss from lightning such as, we think, the parties intended to cover.

The contention that there could be no recovery for loss by lightning because of the lack of notice and proofs of loss from that cause, and claims upon it specifically, seems to raise a substantial objection only to the lack of information that the fall of the wall was to be attributed to lightning. All other facts, including that of the fall of the wall and the loss which resulted from it, had been duly brought to the notice of the insurers, but the whole loss together was stated to have been a result merely of the fire on March 12th, 1925. We agree in the argument of the appellants that there must be notice and proofs of loss by lightning as well as of loss by fire. The provision of the rider is that the policy covers direct loss or damage by lightning, and so the express words would seem to extend all requirements of the policy—all consistent requirements, at least—to the lightning insurance, including the requirement of notice and proofs of loss. The right to the notice and proofs is an important one to the insurer, and one in which it is to be protected. It is not necessary to that right, however, that notices, proofs and claims for losses from two contingencies, be given separately under all circumstances. While if the two contingencies should happen separately and without relation to each other, the notices and proofs would and should be given separately, it is conceivable that when the contingencies happen in combination, as they did to some extent in this instance, it may not be practicable to make a complete separation, or honest

mistake may lead to a lumping of losses under oue clause. There is no express requirement of separate notices, proofs, and claims in such a situation, and we see no ground for implying one.

As to the mere failure to make an earlier disclosure of the claim of a lightning stroke, then, bearing in mind the right of the insurers to a full, frank disclosure of all material facts, it is not every omission from notices and proofs given in due time that will violate that right and deny the insured a recovery under their policy. It is generally true that if there has been no concealment by the insured, and no resulting disadvantage to the insurers which would give rise to an estoppel, the notices and proofs given do not restrict the claim finally, but may be corrected. And correction has been permitted even at a trial. *Pythias Knights Lodge v. Beck,* 181 U. S. 49, 56; *Smiley v. Citizens Ins. Co.,* 14 W. Va. 33; *White v. Royal Ins. Co.,* 149 N. Y. 485; *McElroy v. John Hancock Co.,* 88 Md. 137, 149. The rule against permitting a litigant to "mend his hold" after having taken a less favorable position (*Ohio & Miss. Ry. Co. v. McCarthy,* 96 U. S. 258), has perhaps been applied to other situations, but we think it is to be limited to cases in which there has been concealment or in which there is foundation for an estoppel. 2 *Williston, Contracts,* sec. 744. In the present case it may be inferred that the delay in reporting a lightning stroke placed the insurers at some disadvantage in seeking evidence of the fact. That would be a disadvantage unlikely to result in most cases of delay in disclosure of facts. But there appears to have been nothing to prevent the insurers from getting the evidence, and while the cause of loss is an important fact in the claim, we think it could not be said that any difficulty inferable here from failure to disclose it would of itself afford ground for an estoppel. *Maryland Telephone Co. v. Ruth,* 106 Md. 644, 656.

It is our opinion, however, that when such a ground of claim is not disclosed in the notice and proofs of loss, it is incumbent upon the insured, who have peculiar knowledge of the facts, to show the reasons for the failure, and show

that it was due to honest mistake or ignorance, and not to concealment. Such seems to have been the requirement in the cases last cited and other similar cases. No allowance for such a burden of proof was made in the rulings of the trial court or prayers for instruction on the lack of special notice and proofs for a lightning loss, and to that extent the rulings seem to us to have been defective and erroneous. This should be corrected on a new trial.

The insurers asked at the trial that the jury be directed to specify in their verdict the cause of the fall of the wall as they might find it, and, after this request had been refused and the verdict returned, a motion in arrest of judgment based upon the lack of such specification was made and overruled. It is contrary to the practice in this state to require a jury to answer interrogatories or make special findings of fact in cases in which they are to find general verdicts also. As the appellees have pointed out, a statute of 1894 which permitted such special findings was repealed by the Act of 1900, ch. 641. Whatever the basis of it, whether it be to avoid conflicting verdicts or otherwise, it seems to be a settled practice from which the trial court could not depart.

Without repeating the reasons for our decisions on the questions involved in the several instructions, we find as a consequence that the trial court erred in granting the instruction prayed in the plaintiff's first prayer, and that in the absence of evidence of reasons for delay in notifying the insurers of the claim of loss by lightning, the defendants' first four prayers and their eighth prayer were erroneously rejected, but that there was no error in other rulings.

*Judgments reversed and a new trial awarded,
with costs to the appellants.*