MAY OIL BURNER CORPORATION *v.* FLORENCE
E. Y. MUNGER.
[No. 19, October Term, 1930.]

*Decided November 19th, 1930.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*H. Mortimer Kremer,* with whom was *Albert J. Fleischman* on the brief, for the appellant.

*Chester F. Morrow, Theodore R. Dankmeyer,* and *Niles, Barton, Morrow & Yost,* submitting on brief, for the appellee.

Offutt, J., delivered the opinion of the Court.

On or about March 25th, 1927, the May Oil Burner Corporation, the appellant, entered into a written contract with Mrs. C. A. Munger, the appellee, under which in consideration of $1,658 it agreed to install one May Automatic Oil Burner in each of two boilers located in the Peabody apartment house, which she owned, at Thirtieth and Calvert Streets in Baltimore City. That contract in part provided that:

"It is understood that purchaser will have boiler, flues, and chimney clean, same to contain no obstruction or opening, and chimney be of sufficient capacity, as we assume no responsibility for defects in the heating plant or chimney, or for any damages resulting therefrom or for any consequential damages due to the installation or operation of the burner.

"It is further understood that title to the burner or equipment will not pass to the purchaser until the same has been fully paid for as stipulated herein; and that there are no understandings, verbal or otherwise, pertaining to this proposal which are not set down herein.

"Guarantee: The Quiet May Automatic Oil Burner is guaranteed against any imperfection in materials and workmanship for one year, and to heat your furnace to its normal rated capacity as determined by standard heating methods.

"We will furnish, deliver and install the above described equipment complete with the necessary pipe, valves and fittings, electrical connections and automatic controls for the sum of one thousand six hundred and fifty-eight dollars ($1,658.00).

"Terms of Payment: $200.00 cash with order, $200.00 when tank and pipe work are installed, balance upon completion of installation. A cash discount of 5% will be allowed on the above quotation if paid in full upon completion of installation, or balance may be paid by notes in twelve (12) equal monthly payments.

"This proposal when signed by purchaser and approved by a duly authorized officer of the corporation

will constitute a contract for the installation of the burner described herein."

But the terms of payment stated in the body of the contract were modified by the following supplementary clause written at the foot of it: "$100.00 when installed, note $400.00 due Nov. 1st, 1927, balance 12 monthly notes $96.50, 1st note due Dec. 1st, 1927. Or less 5% of contract price if paid in full on or before Nov. 1st, 1927.

The two burners were installed and finally inspected on October 20th, 1927, and from that time until February, 1929, when they were removed from the boilers, they appear to have been used to heat the building in which they were installed. No part of the purchase price for the burners was paid, nor were the notes referred to in the supplementary clause of the contract ever delivered. But shortly after they were installed a dispute arose between the purchaser and the seller as to whether the burners as installed complied with the requirements of the contract, and on April 24th, 1928, the May Oil Burner Corporation, the appellant, brought an action in assumpsit against Mrs. Munger, the appellee, in the Superior Court of Baltimore City to recover the purchase price stipulated in the contract. Both before and after that date there were negotiations between the parties looking to the correction of alleged defects in the burners, but those attempts to adjust their differences were unsuccessful, and eventually the burners were removed from the boilers, and this action proceeded to a trial, which resulted in a verdict and judgment for the defendant, and from that judgment this appeal was taken.

The record submits some sixty-three exceptions, sixty-two to rulings of the trial court on questions of evidence, and one to its rulings on the prayers.

The appellant's contention in effect is that it sold the appellee two oil burners, known and described by a recognized trade name, to wit: "May Automatic Oil Burners," under a written contract of sale which contained a warranty guar-

anteeing them against imperfections in materials and workmanship for one year, and guaranteeing that they would heat the furnace in which they were to be installed to its "normal rated capacity as determined by standard heating methods"; that it delivered the burners in substantial compliance with its contract and that the appellee in fact accepted them, but that whether she accepted them or not, since they were installed in compliance with the terms of the contract she became liable for the purchase price thereof when they were actually installed in the boilers.

The appellee's contention appears to be that the written contract between the parties should be construed in the light of the circumstances under which it was made. That so construed the appellant not only warranted the burners free from imperfections of material or workmanship, but warranted that they would heat the furnace in which the boilers were so as to produce steam in the radiators installed in said property, that they failed to do that; that such failure was a breach of the warranty, and that for that reason, as well as because the burners as installed were defective in material and workmanship, she was entitled to rescind the contract.

At the close of the whole case Mrs. Munger, the defendant, attempted to set out her theory of the law in four prayers, of which the first was refused and the others granted. That ruling, which is the subject of the sixty-third exception, erroneously numbered fifty-nine, will be first considered.

The plaintiff offered no prayer, so that the three prayers granted at the request of the defendant were the only instructions as to the law of the case given to the jury.

By the defendant's second prayer the jury were told that if they found the execution of the contract "as mentioned in the evidence, and if the jury further find that the said Quiet May Automatic Burners so installed in said property were imperfect in materials and workmanship, and that such imperfection in materials and workmanship was reported by the defendant to the plaintiff, but the plaintiff did not remedy the same, then the plaintiff is not entitled to recover in this action."

By her third prayer they were instructed that if they found that the parties entered into contract "offered in evidence," and that the burners mentioned therein were installed in the heating plant in appellee's property at the corner of Calvert and Thirtieth streets in Baltimore City, and "that the defendant purchased said oil burners for the purpose of heating boilers located in said property so as to produce steam in the radiators installed in said property under all normal conditions of winter weather, and that the defendant relied upon the skill and judgment of the plaintiff in making said purchase; and if the jury further find that the plaintiff knew the purpose for which said oil burners were purchased and knew that the defendant relied upon the skill and judgment of the plaintiff; and if the jury also find that the said Quiet May Automatic Oil Burners so installed in said property were not reasonably fit for the uses and purposes for which they were purchased, then the plaintiff is not entitled to recover in this action, and the verdict of the jury must be for the defendant."

Both of these prayers go to a recovery and direct a verdict for the defendant upon a finding of the facts postulated in them. In effect therefore they excluded from the consideration of the jury all facts other than those supposed in them, and if there was in the case legally sufficient evidence of other facts, the effect of which would have been to so far nullify or modify the facts supposed, as to permit a recovery, the prayers were erroneous and should have been refused. *Friedman v. Hendler Creamery Co.,* 158 Md. 131.

Applying that test to these two prayers, it appears that there is one defect common to both, and that is that they ignored evidence from which the jury could have found that the defendant, with full knowledge of the facts, accepted the burners as installed, and that the property in them passed to her. And since she could not at the same time ratify and rescind the contract, if in fact she did ratify it by accepting the burners with full knowledge of their alleged defects, she could not thereafter elect to rescind it on the ground that such defects constituted a breach of the warranty contained

in it. Code, art. 83, sec. 90, sub-secs. 2, 3 (Uniform Sales Act, sec. 69, sub-secs. 2 and 3). But her remedy lay either in setting up against the seller in this action any breach of warranty by way of recoupment, or in extinction of the purchase price, or in bringing a separate action to recover such damage as she may have suffered as a result of the breach, if in fact there had been a breach of the warranty. Code, art. 83, sec. 90; *Mississippi Shipbuilding Corp. v. Lever Bros. Co.*, 237 N. Y. 1; *Berman v. Littauer*, 141 Md. 649; *Roland v. Markman*, 207 Iowa, 1322.

So that the question finally is, Was there in the case evidence legally sufficient to show that defendant accepted the burners with knowledge of their supposed defects? Since the effect of these prayers was that of a demurrer to the evidence relating to the issue of acceptance or not, the truth of all evidence tending to prove acceptance, together with inferences naturally and legitimately deducible therefrom, will be assumed. *Friedman v. Hendler Creamery Co., supra; Home Credit Co. v. Fouch*, 155 Md. 396; *Atlas Realty Co. v. Galt*, 153 Md. 591; *Security Storage & Trust Co. v. Denys*, 119 Md. 347.

There was offered at the trial evidence tending to prove these facts, which for convenience will be stated in narrative form. The contract to which reference has been made provided for the installation of two Automatic May Oil Burners complete with fuel oil storage tank, a thermostat, and other appurtenant equipment required for the operation of the burners in the two boilers which were at the time used to heat the apartment house. Included in the purchase price of $1,658 was emergency service for the first ninety days of the first heating season, which was defined as extending from October first to May first. The burners were installed, inspected, and found to be operating satisfactorily on October 20th, 1927, by Bernard H. Dow, appellant's installation engineer. Within two or three months after that, Fulton E. Yewell, a brother of Mrs. Munger, who managed the apartment house as her agent, complained to Dow that one of the apartments in the building "was not heating." Dow inspected

it, found a valve in one of the radiators in it locked, adjusted that, and thereafter the apartment was heated satisfactorily.

On January 20th, 1928, an explosion occurred in the chimney to which the boilers were connected, which caused some damage to the boilers. Dow recommended certain necessary repairs, and after they had been made the burners "continued to operate satisfactorily." In April, 1928, a fire occurred in the boiler room, which substantially damaged the burners and the equipment connected with them, so as to prevent their use, and early in the following October the appellant sent its workmen to repair the damage, but after they had made some temporary repairs they were stopped by Mr. Yewell and ordered from the premises. After that Yewell employed the Snowman Electric Company, which repaired the wiring connected with the burners, and installed a different thermostat; in November, 1928, he had the nozzle on one of the burners changed, and during that fall he had the burners adjusted by a steamfitter, and he continued to use the burners to heat the apartment house until February, 1929, when they were removed from the boilers. After their removal the furnace grates, which had been in the boilers before the oil burners were installed, and which had been removed, were replaced, and thereafter coal was used to heat the boilers.

No payments were ever made on account of the purchase price of the burners. Yewell, Mrs. Munger's agent, said that the initial payment was not made because the thermostat had not been installed, and that by the time it was installed the operation of the burners had been so unsatisfactory that "they decided not to make the payment at all until they were corrected." But notwithstanding that conclusion, appellee continued to use the burners, and while she, through her agent, complained that they were not heating the building satisfactorily, it does not appear that she ever requested the appellant to remove them prior to April 21st, 1928, when through her counsel she wrote to the appellant "that the oil burners installed in those apartments at Calvert and Thirtieth streets last year have been entirely unsatisfactory. They have not

heated the apartments properly. They have not heated the apartments sufficiently in cold weather. The heat has been irregular. The thermostats have not functioned properly. The operation of these burners has caused an explosion in the cellar and constitutes a danger to the premises. We therefore notify you that you have breached your contract and we call upon you to remove the burners from the premises."

Appellant denied that the explosion referred to in the letter was caused by any defect in the burners, but attributed it to some defect in the chimney or flue. And notwithstanding the letter, appellee continued, as has been stated, to use the burners until the following February, and it does not appear that she made any other or further demand that they be removed from the premises. Her agent stated "that the last he saw of the May Oil Burners, they were up in the basement of the Peabody Apartments not in use; that there was notice given to the May Oil Burner Company to take them out; that Mr. Morrow notified them; that he himself did not." But it is not clear that, when he said "there was notice given to the May Oil Burner Company to take them out," he referred to the letter written by his counsel or to some other occasion. Many of these facts were disputed, and on behalf of the appellee there was evidence affecting the value of others. But the determination of the disputed facts, and the credibility of appellee's evidence as to other facts tending to modify or nullify them, was a question to be decided by the jury upon all the evidence before them, and for the purpose of the immediate question the facts as we have stated them will be taken as sufficiently proved. Thus regarded, they were in our opinion legally sufficient to warrant the inference that the appellee accepted the burners, and her second and third prayers were defective because they ignored the evidence to prove those facts.

Code, art. 83, sec. 69, provides: "The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after

the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them." That section is identical with section 48 of the Uniform Sales Act, and has been said to be but a legislative recognition of a rule already long and firmly established. *Svoboda v. Barta,* 169 Wis. 338.

Without specifically referring to that section, the court, in *White Automobile Co. v. Dorsey,* 119 Md. 259, held that where the buyer of an automobile had partly paid for it and had used it for several months, his conduct constituted an acceptance. In support of that conclusion it said: "He did not repudiate the contract and return the car within a reasonable time after he had discovered the defects which he complained of; but kept it for at least six months thereafter. Upon the facts in evidence showing full knowledge by the appellee of the alleged defects, and the retention and use of the car by him for such a length of time after he had acquired such knowledge, we have no difficulty in holding that he had abandoned his right to rescind the contract, and, therefore, the only affirmative remedy open to him was a suit for damages for breach of the warranty."

In *Loeblein v. Clements,* 130 Md. 628, which bears some analogy to this case, the appellee, to correct certain defects, made alterations in a monument he had purchased. Stating the effect of those acts the court there said: "According to the Uniform Sales Act, the buyer is deemed to have accepted the goods when they 'have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller.' Code, Art. 83, sec. 69. There could not well be a plainer case than the present for the application of that principle. The testimony was in conflict as to whether the monument had any blemishes of which the defendants could rightfully complain, and as to whether they had notified the plaintiffs of such an objection within five days after the delivery, as provided in the agreement of purchase, but there is no contradiction as to the defendants having changed the condition of the two upper sections of the monument and as to their having permanently appropriated

the two bases to the use for which they were intended. That such conduct necessarily involved an acceptance of the monument, under the indivisible order of purchase, is too plain for argument."

In *Rice v. Dinsmore,* 124 Md. 281, it was held that, where no time is fixed in a contract of sale for the return and rejection of the goods sold, the buyer cannot escape liability by electing to rescind, unless he rejected the goods within a reasonable time after their delivery. *Vapor Vacuum Heating Co. v. Kattenbach & Stevens,* 94 N. J. L. 450, involved the right of a buyer who had purchased an "Oil seal combustion apparatus" to heat a boiler, in an action for the purchase price, to bar the suit by showing a nonperformance by the seller of the terms of the contract. It was held that, "Evidence as to the continued possession and use of the apparatus could not properly be ignored as the defendant requested. Under section 48 of the Sale of Goods Act, those facts, if proved, might amount to an acceptance." And to the same effect is *Robertson Scale Co. v. Richman,* 212 Mich. 334. See also cases collected in *Uniform Laws Ann. & Supp. Case Notes* to section 48; *Bascom v. Danville Stone & Mfg. Co.,* 182 Pa. 427; *Williston on Sales,* (2nd Ed.), sec. 483 and note 86.

Upon the principles stated in the cases cited, we have had no difficulty in reaching the conclusion that there was in this case evidence legally sufficient to permit the inference that the appellee accepted the oil burners described in her contract with the appellant. And since the prayers under consideration ignore that evidence, they should for that reason have been refused.

But they were also defective in failing to refer with more precision to the time when the buyer was required to notify the seller of the supposed defects in the burners. For whether the buyer had accepted the goods or not, she could not rely on a breach of warranty either in recoupment or as a bar unless, within a reasonable time after the breach, she notified the seller thereof (Code, art. 83, sec. 70), unless the seller already had such knowledge of the breach as made such notice

unnecessary. *Rittenhouse etc. Auto Co. v. Kissner,* 129 Md. 111.

A further defect in the prayers was that they failed to state that, as a condition precedent to the appellee's right to rely upon a breach of warranty as a defence, if the title had been transferred to her, she was bound to show that she had either returned or offered to return the burners in as good condition as they were at the time of such transfer, except for such natural deterioration as may have resulted from her use of them for trial or test purposes, or that appellant waived or excused such return. *Williston on Sales* (2nd Ed.), sec. 610; Code, art. 83, sec. 90, sub-sec. 3.

Appellee's third prayer is open to the further criticism that it is predicated upon an implied warranty that the burners would heat the boilers in which they were to be placed "so as to produce steam in the radiators installed in said property under all normal conditions of winter weather." The contract between the parties was in writing and contained an express warranty that the burners would heat appellee's furnace to "its normal rated capacity."

Code, art. 83, sec. 36, provides that: "Subject to the provisions of this subtitle and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. * * *

(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose. * * *

(6) An express warranty or condition does not negative a warranty or condition implied under this subtitle, unless inconsistent therewith."

And it has been held that the "trade name," referred to in subsection 4, is the name given to a particular article by its producer. *Griffin v. Metal Products Co.,* 264 Pa. 254. "The Quiet May Automatic Oil Burner" was such a name, and therefore by force of the act there was no implied warranty of its fitness for any particular purpose. The difference between the express warranty contained in the contract, and the implied warranty alleged in the prayer, was that the former guaranteed the burners to heat the furnace to its "normal rated capacity," while the latter guaranteed that they would "produce steam" in the radiators. That is, in the one case the fitness of the burners was measured by their own intrinsic characteristics and qualities, and in the other by the condition and capacity of the furnace. And while it does not appear to be likely that that defect injured the appellee, it may have misled the jury, and the prayer should have been refused on that ground also.

Defendant's fourth prayer was the ordinary burden of proof prayer. Appellant criticises it on the ground that it was misleading, but we find no merit in the objection. Appellant sued on a written contract for the sale of named and described articles, which contract contained an express warranty as to their quality and fitness for a particular purpose, and in its *nar.* it alleged that it had in all respects complied with the terms and provisions of the contract. To recover, it was bound to prove those allegations, and the mere fact that the defendant controverted its evidence as to them did not shift that burden of proof from the plaintiff to the defendant. If the defendant had affirmed and relied upon facts collateral to or dehors the contract as a defense, the burden of proving such facts would have been upon her, but even that obligation could not have relieved the plaintiff of the burden of proving its own case.

In this case the whole defense was merely a traverse of the plaintiff's evidence that the burners would heat the furnace in defendant's building to its normal rated capacity. Under such circumstances it is not apparent how the jury could have been misled by an instruction which told them

that the burden was upon the plaintiff to prove his case. *Roth v. Continental Wire Co.,* 94 Mo. App. 236; *Jones on Evidence* (3rd Ed.), sec. 177, n. 7. The Maryland cases cited to the contrary are beside the point. *Eckels etc. Ice Mfg. Co. v. Cornell Economizer Co.,* 119 Md. 119, was an action on promissory notes, and the defendant affirmatively set up a defense that the consideration of the notes was a certain device which the plaintiff guaranteed would effect an increase of fifteen per cent. in the capacity of certain boilers in which it was to be installed, and that it failed to effect that improvement. The court there held that, having affirmed those facts, the defendant assumed the burden of proving them. In *Jenkins v. Spedden,* 136 Md. 637, the defendant filed a plea alleging affirmatively certain facts as a defense, which was treated as raising an issue as to the existence of those facts, and it was again held that, having alleged the facts, the burden was upon the defendant to prove them. What was decided in those cases, and all that was decided was, that it is incumbent upon a proponent of disputed facts set up as a defense to prove them. That does not, however, support the proposition that defendant's mere denial of plaintiff's evidence relieved it of the burden of proving its case.

In the course of the trial sixty-two exceptions were reserved to the rulings of the court on questions of evidence; of these thirty-two were abandoned, and the others may be grouped and considered in the order in which they were presented by appellant to this court.

Exceptions 1, 4, 5, 6, 7 and 8 related to the admission of evidence tending to show that plaintiff knew the particular purpose for which the burners were purchased, and knew that defendant relied upon the knowledge and skill of plaintiff's agents to supply burners of the proper size to effect that purpose. The contract itself is silent as to the size or class of the burners to be furnished. The evidence involved in these exceptions therefore tended to explain that ambiguity and complemented, but did not vary, the written contract, and we find no error in those rulings. Exceptions 12, 13, 14, 16, 34 and 35 refer to the admission of evidence designed

to show that the building was not properly heated while the burners were in operation, and Exceptions 21, 22, 23, 24, 32, 33, 33½, 35A, 36, 37, 38, 39, 44, 45, 46, 47, 48, 49 and 50 to the admission of evidence offered to prove that when coal was used in the furnace the building was properly heated. The warranty was that the burners would heat the furnace to its normal rated capacity. The fact that when coal was used the furnace generated heat sufficient to properly heat the building, but that when oil burners were used it did not, had an immediate and important bearing on the question of whether the burners did in fact heat the furnace to its normal rated capacity, and this evidence was properly admitted.

J. Leo Preller, a qualified expert, was permitted over objection to testify whether the burners were of a size and design sufficient to generate steam in the boilers in which they were installed. As that was one of the questions the jury had to determine, his testimony was relevant. And since it related only to the size and design of the burners, the fact that his examination of them was made more than a year after their installation did not make it inadmissible, because it was undisputed that in that period neither their size nor their design were changed, and we find no error in the rulings as to that evidence, which is the subject of Exceptions 40, 41 and 42.

The question involved in the forty-third exception was improper, and there was error in permitting it. Preller was asked if he had heard the evidence as to the explosion which "occurred in the furnace". He was then asked what his opinion as to the cause of it was. The question was manifestly improper because it called for an opinion not necessarily based upon any fact or any evidence in the case. *Owings v. Dayhoff*, 159 Md. 403; *North. Cent. Ry. Co. v. Green*, 112 Md. 487.

Bernard H. Dow, plaintiff's installation engineer and a qualified expert, was asked: "In your experience with May Oil Burners have you ever seen a type L May Oil Burner which did not have sufficient air capacity to combust seven and one-half gallons of oil per hour?" The question was not

allowed and that ruling is the subject of the fifty-eighth exception. The inquiry was collateral and the ruling unobjectionable.

Exceptions 17, 18, 19, 20, 27, 28, 29, 30, 31 and 32 deal with the admission of evidence tending to show conditions in the boiler room and the condition of the boilers, and burners after the institution of this suit. Since there was evidence that during that period the burners were being operated on trial with the consent of the plaintiff, and since the conditions referred to in the evidence may have affected the operation of the burners, we find no error in the admission of that testimony.

Frank J. Klein, plumber and steamfitter, was asked if the capacity of the two boilers was sufficient to heat the building, and was permitted over objection to answer. For reasons already stated, there was no error in allowing that testimony, which is the subject of Exceptions 51, 52 and 54.

For the errors involved in Exception No. 59 it will be necessary to reverse the judgment appealed from and remand the case for a new trial.

*Judgment reversed and case remanded for a new trial, with costs to the appellant.*