## EMPIRE STATE INSURANCE CO. OF WATERTOWN, N. Y. ET AL. *v.* GUERRIERO

[No. 5, October Term, 1949.]

508

510

*Decided November 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Jacob Kartman,* with whom were *Makover & Kartman* on the brief, for the appellants.

*Paul L. Cordish* for the appellees.

COLLINS, J. delivered the opinion of the Court.

Mary Guerriero, as plaintiff, appellee here, sued the three appellants jointly on three policies of fire insurance, in standard form, covering her property on Forrest Street in Baltimore. From a judgment in favor of the appellee the appellants appeal to this Court.

Each policy contained an extended provision to cover, among other things, "explosions." The trial judge in his charge to the jury gave the following definition of "explosion," to which no exception was taken by any of the parties: "Explosion is to be understood in the sense that it is used by ordinary men and not in its scientific sense. It may be regarded or defined as a bursting with violence and noise, because of internal pressure, or a sudden, violent bursting or breaking, caused by an internal force and accompanied by a sudden or rapid expansion of air and a sharp noise or report. In this sense, it is to be distinguished from an ordinary rupture or breaking without extreme violence. A mere rupture is not an explosion."

The appellants contend (1) that the trial judge erred in admitting in evidence the testimony of Henry E. Kreis who has been engaged in the heating and power plant construction business for the past forty years and who testified as an expert in the case; (2) that the court erred in refusing to direct a verdict for each defendant; (3) that the trial judge erred in his charge to the jury with respect to proofs of loss and waiver thereof.

As we must pass upon the demurrer prayers it is necessary that we recite the evidence at some length. Between the hours of 7:30 and 8:00 a.m. on January 20, 1948, the husband of the appellee visited the unheated building, covered by the insurance policies, and used as a warehouse incident to the grocery business conducted by the appellee. The temperature in Baltimore on that day varied from a minimum of 21 to a maximum of 38 degrees. In order to heat water to wash bottles, clothes, and rags, he lit the gas burner under the hot water heater which he testified had been in good condition. He saw

nothing wrong with it at that time. He said that there was no gas escaping and no water around the heater then. In about forty-five minutes he returned to the building and found water dripping from the second to the first floor. He ran upstairs, smelled gas and turned the heater off, and then observed a stream of water coming from a hole in the coil. The loss was immediately reported to the appellants.

Mr. Henry E. Kreis, whose qualifications as an expert were not questioned, testified that he has been in the heating and power plant construction business since 1909, and has sold and installed a great many heaters of this type and has had experience with explosions of heating and hot water equipment. As a result of a telephone call he visited the appellee's warehouse shortly after January 20th. He found the particular coil lying on a table. He examined it and saw the rupture in the bottom of the coil. He examined the coil and testified that in his opinion "that hole was caused by an explosion, caused by abnormal pressure within the coil, which was built up by the gas burner. The gas caused pressure inside that coil. That could come from several reasons. It could come from cloggage in the lines; it could come from overloading and building up steam pressure in the coil and the pipe work and tank, or could come from part of the line being frozen, and when the gas was turned on, it built up pressure and caused it to explode. The looks of the coil, the metal is turned out, showing an abnormal pressure pushed it out, an explosion pushed it out. In my opinion, if that coil had frozen, you would have seen water there first, some little bit of water, and shortly after you would have had a great deal of water and the coil would have cracked in a line parallel to the sides of the coil, it would not have blossomed out, what we call blooming." He testified that, even if the water had frozen in a solid mass of ice during the night and expanded and broken the coil, there probably would have been some drippage which would have been observed on the gas burner and which would have made it difficult to

light. He said that in his opinion the coil burst because of an explosion and that is why so much water came out of the coil, because when the burner was lit probably all of the ice in the coil thawed out, and the pipe leading from the heater to the tank was still frozen because there was no circulation up there, and when that burst the water ran freely. Of course, no one heard an explosion. When asked by the Court whether he had ever heard "of one of these things exploding," he answered, "No, Your honor, I have never, in that type." He evidently meant that he had never heard of an explosion in that particular design. However, he testified that he had had experience with from seventy-five to one hundred explosions in heating and water equipment. When asked how he reconciled the statement that this was an explosion, with the statement that if the water in the coil froze and the coil expanded it resulted in a bursted coil, he answered, "I said that the condition of that rupture, where that metal was turned out proved it was an abnormal pressure in there, an explosive pressure, that if that coil had frozen, it would split. I've seen a great many of them that have frozen and split and they split in a line parallel with the sides of the coil; they wouldn't turn the metal out or bloom the metal out or blossom the metal out." He emphasized in his testimony that the "blooming out" of the pipe indicates an explosion and not a freezing and if the pipe had frozen it would have split along its length. He said if the break had been caused by freezing it would split parallel with the sides of the tubing and the metal would be somewhat parted to relieve the pressure caused by the ice.

The appellants contend that the facts to be proven were within the ordinary knowledge and experience of man and were not the subject of expert testimony, and the failure or inability of the appellee to produce proof of facts to support a finding of an explosion did not permit the substitution of expert testimony for factual testimony. They further contend that even though expert testimony were admissible there was no factual basis

shown or stated, upon which expert testimony could be predicated, and it was improper to permit the expert to characterize the occurrence as an explosion. They contend that there were not sufficient physical facts to permit an expression of opinion and when the expert testified that in his opinion there had been an explosion, he usurped the function of the jury.

It is of course well settled that the evidence of an expert witness is not admissible if the jury is able to decide or determine the question before it without special expert testimony. The witness must not usurp the province of the jury. *Baltimore Belt R. Co. v. Sattler,* 100 Md. 306, 334, 59 A. 654, 3 Ann. Cas. 660; *Hanrahan v. City of Baltimore,* 114 Md. 517, 527, 80 A. 312; *Capital Traction Co. v. Contner,* 120 Md. 78, 83, 84, 87 A. 904; *Griffith v. Pullman Co.,* 142 Md. 514, 521, 121 A. 362; *Blinder v. Monaghan,* 171 Md. 77, 87, 188 A. 31; *Bode v. Carroll-Independent Coal Co.,* 172 Md. 406, 418, 191 A. 685; *Long v. Joestlein,* 193 Md. 211, 66 A. 2d 407, 411. If a matter is within the knowledge and experience of persons of ordinary judgment and experience, opinion evidence, expert or otherwise, should not be admitted. If the facts can be intelligently understood by the jury and they can form a reasonable opinion from those facts for themselves, there is no reason to admit the opinion evidence of anyone. However, when the question involved is such that jurors of ordinary judgment and experience are incompetent to draw their own conclusion from the facts presented and intelligently decide the question before them without the aid of expert testimony, this opinion testimony is a notable exception to the well known rules of evidence. This exception should be applied with the greatest caution and discrimination. *Harris v. Consolidation Coal Co.,* 111 Md. 209, 219, 73 A. 805. It was said by this Court in the case of *Langenfelder v. Thompson,* 179 Md. 502, at page 505, 20 A. 2d 491, at page 493, 136 A. L. R. 960, "In accordance with the weight of authority, it has been held by this Court that while expert testimony is not admissible on a ques-

tion which the jurors themselves can decide from the facts, it is admissible when the formation of a rational judgment from the facts requires special training or skill. *Consolidated Gas, Electric Light & Power Co. v. State, to Use of Smith,* 109 Md. 186, 203, 72 A. 651, 658."

In the case before us the coil was admitted in evidence without objection and the jury viewed it. It is evident that a person of ordinary experience and intelligence could not tell from observing this break in the coil whether it was caused by an explosion or merely by the freezing of the pipe. It is a well known fact that ice has only a certain expansive distance. There was no water on the burner before it was lit. The hole was at the bottom of the tube where the ice first melts. The "blossoming out" of the pipe was peculiar and supports the opinion of the expert. The jury could receive appreciable help from the expert. *Wigmore on Evidence,* Vol. 7, page 21, paragraph 1923. In this case there was rational support for the opinion of the expert. In *May Oil Burner Corporation v. Munger,* 159 Md. 605, 620, 152 A. 352, an expert was permitted to testify whether the burners were of a size and design sufficient to generate steam in the boilers in which they were installed. It was held in *Beck & Co. v. Hanline,* 122 Md. 68, 80, 89 A. 377, it was competent for an expert to testify as to the effect of water pressure upon water pipes. In *Baltimore Refrigerating & Heating Co. v. Kreiner,* 109 Md. 361, 370, 371, 71 A. 1066, a witness who had been in charge of the cold storage department of a company for eight years, and who had been in the cold storage business for twenty years, and who had inspected a number of cold storage plants was held qualified to testify as an expert as to the proper and usual construction of iceboxes. In *Pennsylvania R. Co. v. Orem Fruit & Produce Co.,* 111 Md. 356, 362, 73 A. 571, a witness experienced in shipping fruit was allowed to testify as to the time ice would melt in a car at certain temperatures. In *American Towing & Lightering Co. v. Baker-Whiteley Coal Co.,* 111 Md. 504, 527, 75 A. 341, a sea captain with

thirty years experience in towing was held to be entitled to testify as an expert concerning the sufficiency of a hawser in towing. In *Pennsylvania Steel Co. v. Nace,* 113 Md. 460, 486, 77 A. 1121, 45 L. R. A., N. S., 281, evidence of experts was held admissible in regard to the hardening process of concrete. In the case at bar, no one having been present at the time the leakage occurred in the coil offered in evidence, and the hole in the pipe being of such an unusual nature that jurors of ordinary intelligence and experience would have difficulty in determining what caused the break, there being rational support for the opinion of the expert, we are of the opinion that this evidence gave appreciable help to the jury and was properly admitted.

Of course, in deciding whether a directed verdict should be granted, the court must assume the truth of all the testimony given to the jury tending to sustain the plaintiff's right to recover and of all inferences of fact fairly deducible therefrom. *Automobile Banking Corporation v. Willison,* 181 Md. 118, 125, 28 A. 2d 464, and cases there cited. The jury having viewed and examined the coil and the testimony of the expert being admissible, we are of the opinion that there was evidence of sufficient probative force to enable an ordinary intelligent mind to draw a rational conclusion therefrom in support of the appellee's claim.

The appellants also contend that the directed verdicts should have been granted because the "proofs of loss" filed by the appellee were not sufficient to comply with the policy requirements and there was no evidence of waiver thereof. The day after the fire occurred the parties to this case executed a non-waiver agreement and on January 27, 1949, an agreement was executed that the damages amounted to $1971.12 This agreement also contained a provision that it "does not in any respect waive formal proofs of loss or any conditions of said policies." The proofs of loss filed by the appellee on March 11, 1948, stated "a fire occurred on the 20th day of January, 1948, * * *. The cause and origin of said

fire were unknown." This proof of loss was made on a form where the word "fire" was in print. The appellants in their brief make the following concession: "We recognize the rule that where the company has unqualifiedly denied liability before proofs of loss are, or must be, filed, the company will be held to have waived proofs, but that principle of law is not involved in this case, as there is no suggestion that the companies had done any acts prior to the filing of the proofs which might have constituted a waiver of proofs." The appellants contend that because the proofs of loss make no claim for loss by explosion that the directed verdicts should have been granted and cite as authority the case of *Automobile Insurance Co. v. Thomas,* 153 Md. 253, 138 A. 33, 53 A. L. R. 669. In that case suits were entered on fire insurance policies, with riders to cover loss by lightning. The loss occurred during a severe thunderstorm. The proofs of loss made no disclosure of claim for a loss by lightning. This Court reversed judgments against the insurance company and remanded the case for new trial, on account of certain rulings on the prayers and held that when such a ground of claim is not disclosed by the proof of loss it is incumbent upon the assured, who possesses peculiar knowledge of the facts, to show the reasons for the failure to disclose and show that it was due to honest mistake or ignorance and not to concealment. The Court said in that case 153 Md. at page 262, 138 A. at page 37: "As to the mere failure to make an earlier disclosure of the claim of a lightning stroke, then, bearing in mind the right of the insurers to a full, frank disclosure of all material facts, it is not every omission from notices and proofs given in due time that will violate that right and deny the insured a recovery under their policy. It is generally true that, if there has been no concealment by the insured, and no resulting disadvantage to the insurers which would give rise to an estoppel, the notices and proofs given do not restrict the claim finally, but may be corrected. And correction has been permitted even

at a trial. *Pythias Knights Supreme Lodge v. Beck,* 181 U. S. 49, 56, 21 S. Ct. 532, 45 L. Ed. 741; *Smiley v. Citizens' Fire Marine & Life Ins. Co.,* 14 W. Va. 33; *White v. Royal Ins. Co.,* 149 N. Y. 485, 44 N. E. 77; *McElroy v. John Hancock Mut. Life Ins Co.,* 88 Md. 137, 149, 41 A. 112, 71 Am. St. Rep. 400."

In the case at bar Mr. Hamilton, an adjuster and investigator for the insurance companies, on January 20th, the day of the fire, visited the premises with the husband of the appellee and made a survey of the entire building. He returned again the next day with an adjuster representing the appellee, and two or three days later these latter two with another adjuster visited the premises, looked over the entire building, examined the water heater and discussed the loss in detail. Mr. Hamilton testified as follows: "I observed that a portion of the coil in the lower part, there was a hole, there was ice protruding from that hole and immediately under it. Upon seeing that condition, I told Mr. Guerriero that such a condition as we were looking at was certainly not covered under his policy contract, it appeared to have been caused by freezing and that accordingly he was not covered for such a thing; it would be necessary that we inform him of that immediately, see what his reaction was, and at that time he frankly stated he did not know what had occurred. He did give me a history of having entered the building earlier, of lighting the heater, leaving the premises and upon his return found water dripping from the ceiling, at the front door, which was quite some distance away." In *Spring Garden Insurance Co. v. Whayland,* 103 Md. 699, 64 A. 925, a claim was made for loss sustained by fire which damaged and destroyed personal property described in the policy. After the fire the agents of the insurance company instructed the assured to make out detailed lists of the articles destroyed and of those damaged. This direction was complied with at once and the itemized lists delivered to the insurer's agents. No objection was made to the form of the proof of loss evidenced by the lists of damaged

and destroyed articles until the trial of the case when the Court was asked to grant a demurrer prayer because the required preliminary proof of loss to be furnished within sixty days after the fire, was not filed. In holding that the demurrer prayer should not have been granted this Court pointed out that the proof of loss forms are required for the benefit of the insurer in order that the nature, extent and character of the loss may be ascertained. There is no reason why the insurer may not waive a compliance with the provision inserted for its sole benefit. Such a waiver may be inferred from the acts and conduct of the company. Good faith demands that the insurance companies be frank and open in their dealings with their policy holders. The Court in that case said, 103 Md. at page 701, 64 A. at page 926: "* * if a refusal to recognize the obligation to pay a loss be placed on other and distinct grounds than an alleged insufficiency of, or defects in, the preliminary proofs, the company will be regarded as having waived all objections that could have been taken to such preliminary proofs. These principles have been so repeatedly declared and enforced that they must be regarded as definitely settled in this State, and we need not pause to quote from decided cases in support of them. The acts and conduct of the appellant company were wholly inconsistent with the theory that its refusal to pay the loss was based upon insufficient preliminary proof. At no time was there communicated to the assured or her attorney an intimation that the proof of loss was unsatisfactory or defective." In the case at bar the appellants' agent inspected the premises many times the week after the loss occurred. The only question under consideration was whether the pipe had burst from freezing or from an explosion. No claim was made that the proofs of loss were insufficient, unsatisfactory, or defective. The facts of the case were freely and openly disclosed to the insurance companies. The appellants knew from the beginning that the appellee's claim was based on the explosive clause. There was no concealment re-

sulting in a disadvantage to the insurers. As hereinbefore shown, with all the facts before them the appellants rejected the claim on the ground that the loss was not covered by the policy contract. We are of the opinion under the evidence and law that the error in the proof of loss forms did not give rise to estoppel and justify the granting of directed verdicts.

The trial judge instructed the jury that if they found that proofs of loss were furnished within sixty days, the time required by the policies, and if they further found that the defendants denied liability under the policies on grounds other than the sufficiency of the proofs of loss, then that would constitute a waiver of the sufficiency of the proof of loss and would constitute a waiver of the requirement that sufficient proofs of loss should be filed. That part of the charge was excepted to by the appellants on the ground that the implied waiver is one to be determined solely by the jury upon the hypothesis of such facts. In the case of *Rokes v. Amazon Ins. Co.*, 51 Md. 512, this Court said at page 520, 34 Am. Rep. 323; "It is conceded that where proofs of loss are furnished in time, and such proofs are defective, if the insurer puts his refusal to pay on other and distinct grounds, he will be held to have waived all objections to such defects; and will not be permitted to rely upon them in a suit upon the policy. Fair dealing in such cases, requires that the insurer should make known his objections when the proofs are furnished, in order that the insured may correct the same within the time prescribed by the policy." *Citizens' Fire Insurance, Security & Land Co. v. Doll,* 35 Md. 89, 6 Am. Rep. 360; *Caledonian Insurance Co. v. Traub,* 80 Md. 214, 30 A. 904; *Caledonian Fire Insurance Co. v. Traub,* 86 Md. 86, 37 A. 782; *Bakhaus v. Caledonian Ins. Co.*, 112 Md. 676, 77 A. 310; *Citizens' Mutual Fire Insurance Co. v. Conowingo Bridge Co.*, 113 Md. 430, 77 A. 378. We are of opinion that the judgment should be affirmed.

*Judgment affirmed, with costs.*